*In re* MARRIAGE OF JOAN OLSEN, Petitioner, and CHARLES OLSEN, Respondent (Wayne Sanchez, Ex'r, Petitioner-Appellant; Charles Olsen, Respondent-Appellee).

Second District   No. 2—86—0548

Opinion filed June 16, 1987.

INGLIS, J., dissenting.

Daniel A. Reed and David J. Chroust, both of Drendel, Schanlaber, Horwitz & Tatnall, of Aurora, for appellant.

Joseph M. Laraia, of Joseph M. Laraia & Associates, P.C., of Wheaton, for appellee.

JUSTICE DUNN delivered the opinion of the court:

Wayne Sanchez, executor of the estate of Joan Olsen, brought this action against Charles Olsen to recover certain stock allegedly due to Joan Olsen under the terms of a judgment of dissolution. The circuit court of Du Page County found that petitioner was not yet entitled to the stock and granted respondent's motion for judgment in his favor at the close of petitioner's case in chief. We affirm.

The marriage of Charles Olsen and Joan Olsen was dissolved by a decree entered October 30, 1974. The decree incorporated a property settlement agreement which, in relevant part, provides as follows:

"7. That in reference to their joint and mutual property rights the parties hereto have entered into an oral property settlement agreement, pursuant to which it has been agreed:

* * *

(b) The Husband has a pension stock plan and a supplemental pension fund in connection with his employment. [sic] and in reference to the pension stock there exists [sic] 559.39 shares of Sears Roebuck stock and it has been agreed that the plaintiff waive [sic] all claims as to the supplemental pension and retirement funds of the defendant. The parties have agreed in reference to the 559.39 shares of stock that at the time the defendant retires he shall deliver to the plaintiff one-half of the 559.39 to be her sole property provided in the event plaintiff remarries prior to the retirement of defendant she waives all claims as to her one-half share of the 559.39 shares of stock."

Joan Olsen died December 16, 1983, without having remarried. The executor of her estate, Mr. Sanchez, soon thereafter discovered that respondent had withdrawn the stock on September 18, 1980. Mr. Sanchez then filed this action to recover the stock, contending that respondent violated the terms of the decree by withdrawing the stock at a time when Joan Olsen was still alive and not remarried. Respondent answered that the stock was actually meant to be deferred maintenance, rather than a property settlement, which abated on Joan

Olsen's death. In the alternative, respondent argued, even if the stock was a property settlement, the time of performance had not arrived since he had not retired.

A hearing was held at which respondent and Sanchez testified. Respondent admitted that the Sears stock had split two-for-one in 1977 and that he had withdrawn all the shares in 1980. He also admitted that he had not delivered any of the stock to Joan Olsen or her estate, but testified he still works for Sears. Sanchez testified that Joan Olsen had not remarried before her death in 1983. Respondent moved for a judgment in his favor at the close of petitioner's case in chief. The trial court granted the motion, finding that "petitioner ha[d] not shown the circumstance of anticipatory repudiation."

As petitioner correctly notes, the terms of the settlement agreement set forth in the decree are enforceable as contract terms. (Ill. Rev. Stat. 1985, ch. 40, par. 502(e).) The agreement in question requires respondent to deliver one-half of a certain amount of Sears stock, but not until the time respondent retires. Petitioner does not contend that respondent is retired. Petitioner does argue, however, that since respondent withdrew the stock in question from his pension fund, he is no longer able to perform under the agreement and has thus anticipatorily repudiated his obligations under the agreement.

An anticipatory breach occurs when one party to an executory contract manifests a definite and unequivocal intent prior to the time fixed in the contract that it will not perform under the contract when that time arrives. (*Leazzo v. Dunham* (1981), 95 Ill. App. 3d 847, 849, 420 N.E.2d 851.) Such manifestation may be in the form of a definite statement that performance will not be forthcoming (*B & C Electric, Inc. v. Pullman Bank & Trust Co.* (1981), 96 Ill. App. 3d 321, 328, 421 N.E.2d 206), or a voluntary affirmative act which renders the obligor unable or apparently unable to perform. (Restatement (Second) of Contracts sec. 250(b) (1981).) Whether a party has committed a breach is a question of fact, and the trial court's judgment thereon should not be disturbed unless it is clearly against the manifest weight of the evidence. *Executive Centers of America, Inc. v. Bannon* (1978), 62 Ill. App. 3d 738, 743, 379 N.E.2d 364.

Respondent first argues that the doctrine of anticipatory repudiation is not applicable to the agreement in question. It has been stated that the doctrine of anticipatory repudiation has no application in the case of a bilateral contract that has become unilateral and unconditional by the performance of one party. (*Guaranty Bank & Trust Co. v. Reyna* (1964), 51 Ill. App. 2d 412, 424, 201 N.E.2d 144; Restatement of Contracts sec. 318 (1932).) The above stated rule is an

acknowledgement that the doctrine of anticipatory repudiation originally developed to protect a nonbreaching party from having to continue a course of futile performance when it is clear that the other party will not perform. (See, *e.g.*, S. Williston, Contracts sec. 1301 *et seq.* (1968).) Such protection is not necessary when the nonbreaching party has only to wait until the time set forth in the contract for performance.

Respondent notes that Joan Olsen's obligation was to remain unmarried until respondent retires, and that due to her death before remarriage, she has fully performed. Petitioner, however, argues that since Joan Olsen was still alive when respondent withdrew the stocks, the agreement was still bilateral and conditioned on her remaining unmarried. We need not decide whether Joan Olsen's death precluded application of the doctrine of anticipatory repudiation since the trial court's determination that anticipatory repudiation had not been shown is not against the manifest weight of the evidence.

Respondent, by the terms of the agreement, is not required to deliver the stock until he retires. Although he withdrew the stock and has not since repurchased the shares, he has not communicated any intention to refuse to deliver them upon his retirement. The Restatement of Contracts does provide that a party may anticipatorily repudiate by transferring an interest in specific land, goods, or any other thing essential for the substantial performance of the contract. (Restatement of Contracts sec. 318(b) (1932).) Here, however, respondent has not transferred an interest in any *specific* thing necessary for performance. This court takes notice that Sears stock is freely traded and may be purchased at any time by respondent. (See, *e.g.*, *In re Estate of Johnson* (1976), 39 Ill. App. 3d 246, 350 N.E.2d 310.) Although petitioner argues that the agreement calls for respondent to deliver the shares that were in the pension fund at the time of the dissolution, we do not agree that the decree requires any specific shares to be delivered. There is nothing unique about a share of Sears stock that would justify requiring respondent to produce the exact shares that he held at the time of dissolution.

In summary, we hold that the trial court's finding that no anticipatory repudiation was shown is not against the manifest weight of the evidence. Since anticipatory repudiation was not shown, the trial court did not err in finding for respondent at the close of petitioner's case in chief. Furthermore, it is not necessary to address petitioner's argument that certain testimony of Mr. Sanchez was improperly excluded, since that testimony was relevant only to any damages petitioner might have recovered.

Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

NASH, J., concurs.

JUSTICE INGLIS, dissenting:

I dissent from the opinion of the majority. The majority seeks to write a provision into the settlement agreement and judgment of dissolution. In determining the meaning of a contract, every effort must be made to effectuate the intentions of the parties. (*Braeside Realty Trust v. Cimino* (1985), 133 Ill. App. 3d 1009, 1011; *A. A. Conte, Inc. v. Campbell-Lowrie-Lautermilch Corp.* (1985), 132 Ill. App. 3d 325, 328.) Adherence to the rule allows parties to bargain freely for any legal purpose. It permits the parties to have the freedom to contract as they wish, not as some outsider (a court) wishes. The court does not have the authority to make a contract for the parties or, by construction, to write a new one into which the contracting parties have not entered. (*Sigma Delta Tau Society v. Alongi* (1976), 44 Ill. App. 3d 650, 652.) In my opinion, this case involves more than a simple promise of one person to deliver Sears Roebuck stock to another person on the happening of certain events.

One spouse waived her rights to the other spouse's pension fund upon agreement that *specific stock* in the fund would be given to her upon his retirement provided she had not remarried. He secretly took the stock from the fund although there was no provision allowing him to do so. The clear intention of the agreement was to provide security for her old age. The majority implicitly condones secretly withdrawing assets from the fund and jeopardizing her future. The majority states that the pension fund shares of stock were not "specific," therefore, protection was not necessary. I respectfully disagree.

The promise was to deliver, upon respondent's retirement, one-half of the 559.39 shares of Sears Roebuck stock then held in the stock plan. In 1977, Sears stock split two for one, thus increasing the number of shares affected by the judgment of dissolution from 559.39 shares to 1,118.78 shares. Respondent admitted he took complete withdrawal, in cash, of the entire amount in 1980. The majority overlooks petitioner's claim to the increased number of shares on the basis that since respondent had not yet retired, no harm has been done. Petitioner's claim to the increase, based on *Allen v. National Bank* (1958), 19 Ill. App. 2d 149 (wherein the court held that in the absence

of an intention to the contrary, a legatee of shares of stock is entitled to additional shares issued as a result of a stock split occurring after execution of a will), is well taken. Similarly, in the instant case, the parties intended that petitioner receive a specific portion of stock from respondent's pension fund, and the stock split does not make the stock any less specific.

The court should not assume that no harm is done until the day of payment arrives and payment is not made. In the typical family case, animosity between the parties and the temptation to financially harm each other is great. If the majority has no objection to the removal of a share of stock because it is not unique, it stands to reason that there would be no objection to removal of other fungible assets. I believe this decision will open the door to raids on pension plans and similar trusts. I therefore dissent.