(No. 65550.—

*In re* MARRIAGE OF JOAN OLSEN and CHARLES OLSEN, Appellee (Wayne Sanchez, Executor, Appellant).

*Opinion filed May 26, 1988.—Rehearing denied October 3, 1988.*

Daniel A. Reed and David J. Chroust, of Drendel, Schanlaber, Horwitz & Tatnall, of Aurora, for appellant.

Joseph M. Laraia, of Joseph M. Laraia & Associates, P.C., of Wheaton, for appellee.

JUSTICE CUNNINGHAM delivered the opinion of the court:

Wayne Sanchez, executor of the estate (hereinafter, the estate) of Joan Olsen (hereinafter, the deceased), filed this action in the circuit court of Du Page County against respondent, Charles Olsen, to recover one-half of the proceeds from respondent's pension due under a dissolution of marriage settlement agreement. The estate alleged that respondent had breached his agreement with the deceased and had "wilfully and contumaciously violated the decree of divorce, by converting all of his then existing shares in the pension stock plan to cash, withdrawing the proceeds of said conversion, and failing and refusing to deliver any portion thereof to Plaintiff." The estate also filed a motion for summary judgment.

After a hearing, the circuit court denied the estate's motion and set the cause for trial. After the estate concluded its case at the trial, the circuit court granted respondent's motion for directed verdict, finding that the estate had failed to show any anticipatory breach or repudiation of the contract. The appellate court, with one justice dissenting, affirmed (156 Ill. App. 3d 540), finding that "[a]lthough he withdrew the stock and has not since repurchased the shares, he has not communicated any intention to refuse to deliver them upon his retirement." (156 Ill. App. 3d at 543.) The appellate court held that anticipatory repudiation was not shown. We allowed the estate's petition for leave to appeal under Supreme Court Rule 315 (107 Ill. 2d R. 315(a)).

On October 30, 1974, the circuit court entered an order for the dissolution of marriage between the deceased and respondent. The decree incorporated the terms of the oral settlement agreement between the parties, which provided, in part:

"7. That in reference to their joint and mutual property rights the parties hereto have entered into an oral property settlement agreement, pursuant to which it has been agreed:

\* \* \*

(b) The Husband has a pension stock plan and a supplemental pension fund in connection with his employment and in reference to the pension stock there exists 559.39 shares of Sears Roebuck stock and it has been agreed that the plaintiff waive [sic] all claims as to the supplemental pension and retirement funds of defendant. The parties have agreed in reference to the 559.39 shares of stock at the time defendant retires he shall deliver to the plaintiff one-half of the 559.39 to be her sole property provided in the event plaintiff remarries prior to the retirement of respondent she waives all claims as to her one-half share of the 559.39 shares of stock."

Over a year later, on December 13, 1975, the deceased signed a written assignment of her interest in the supplemental pension plan.

In 1977, the Sears, Roebuck & Company stock in the pension fund split two for one, thereby increasing the number of shares covered by the agreement and decree from 559.39 to 1118.78 shares. Three years later, on September 18, 1980, respondent terminated his participation in the Sears pension stock plan and received a cash disbursement from Sears for the value of the shares held in the pension stock plan. On December 16, 1983, the deceased died. It is uncertain from the record whether or not the deceased had any knowledge of respondent's action. It was not until after the death of the deceased that the estate discovered the actions of respondent. Respondent at that time had not started another pension stock account similar to the one he had terminated and only maintained the supplemental pension stock plan which the deceased waived all rights to at the time of the dissolution. At the time of the deceased's death, she had not remarried.

Pursuant to section 502(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 502(a)), the court is empowered to promote amicable settlement of disputes between parties to a dissolution of marriage proceeding. In furthering the objectives of section 502(a), the court may accept an oral or written settlement agreement and incorporate that agreement into the divorce decree. When the agreement becomes a part of the decree, the court is authorized to enforce the terms of the agreement by all remedies available for the enforcement of a judgment and of a contract. Ill. Rev. Stat. 1985, ch. 40, par. 502(e).

The issue before this court is not whether respondent's action amounted to an anticipatory repudiation of

24

the settlement agreement because, as this court finds, the doctrine cannot be applied in this case. The doctrine of anticipatory repudiation requires a clear manifestation of an intent not to perform the contract on the date of performance. The failure of the breaching party must be a total one which defeats or renders unattainable the object of the contract. (*Lake Shore & Michigan Southern Ry. Co. v. Richards* (1894), 152 Ill. 59, 84.) That intention must be a definite and unequivocal manifestation that he will not render the promised performance when the time fixed for it in the contract arrives. (*B & C Electric, Inc. v. Pullman Bank & Trust Co.* (1981), 96 Ill. App. 3d 321, 328.) Doubtful and indefinite statements that performance may or may not take place are not enough to constitute anticipatory repudiation. (*Henderson v. Lemna* (1979), 76 Ill. App. 3d 168, 170.)

> "Where the two contracting parties differ as to the interpretation of the contract or as to its legal effects, an offer to perform in accordance with his own interpretation made by one of the parties is not in itself an anticipatory breach. In order to constitute such a breach, the offer must be accompanied by a clear manifestation of intention not to perform in accordance with any other interpretation. So, also, the making of a demand upon the other party to a contract that he shall perform in accordance with an interpretation that is not justified by the law is not in itself a repudiation; such a demand, however, does not require much by way of accompanying expressions in order to justify the other party in understanding that no performance other than that demanded will be accepted." 4 A. Corbin, Contracts §973, at 911-12 (1951).

In this case, the problem is one of contract interpretation. Respondent does intend to perform but only within his interpretation of the contract clause and, as such, respondent's promise does not amount to anticipatory breach. Furthermore, respondent's version of the

contract does not make any demand on the estate to perform within his interpretation. Without more facts to establish a clear intention of anticipatory breach, this court cannot apply the doctrine. This court would need testimony from the injured party, the deceased, regarding her interpretation of the contract or her version of the circumstances underlying the construction of the contract. Further, the Dead Man's Act (Ill. Rev. Stat. 1985, ch. 110, par. 8—201) would not allow either of the parties to testify regarding any statements made by the deceased on this matter.

Although respondent's actions may have defeated the object of the contract for the present, his statements reveal that he will perform pursuant to the contract only at the time of his retirement. These actions and statements do not reveal a clear manifestation of an intention to defeat or breach the contract at the time of his retirement. Furthermore, without any testimony from the injured party, the deceased, regarding any knowledge of the cash disbursement or respondent's interpretation of the contract—she must be alive at the time of his retirement—this court cannot determine whether or not respondent manifested a clear intent to defeat or not to perform the contract. Respondent's statements and actions at best reveal an ambiguous intent but not a clear one. Anticipatory breach is not a remedy to be taken lightly. As such, this court finds that the concept of anticipatory breach is inapplicable in this case and does not reach the merits of the issue.

Although the concept of anticipatory breach is inapplicable in this case, this court is not precluded from enforcing the agreement based upon other contract remedies pursuant to section 502(e). This court finds that this case is one of strict contract interpretation. When enforcing a contract, the primary objective is to construe the contract to ascertain the intent of the parties and to

give effect to that intent. (*United Airlines, Inc. v. City of Chicago* (1987), 116 Ill. 2d 311, 318.)

> "Generally, where no ambiguity exists, the intention of the parties must be ascertained from the contract itself. (*Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 293.) It is well established that a contract should be given a fair and reasonable construction based upon a consideration of all of its language and provisions. (*Shelton v. Andres* (1985), 106 Ill. 2d 153, 159; *Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 67.) In determining 'a fair and reasonable construction, "courts are not confined to a strict and literal construction of the language used, when such construction will frustrate the intention of the parties, gathered from a consideration of the whole instrument." ' (*Shelton v. Andres* (1985), 106 Ill. 2d 153, 159, quoting *Shadden v. Zimmerlee* (1948), 401 Ill. 118, 123.) Thus, while the language used in a contract is ordinarily the best evidence of the intention of the parties, a court may properly disregard even unambiguous language when it is clear that the parties meant something different from what was said. *White v. Roughton* (7th Cir. 1982), 689 F.2d 118, *cert. denied* (1983), 460 U.S. 1070, 75 L. Ed. 2d 947, 103 S. Ct. 1524; see also Restatement (Second) of Contracts sec. 202, comment c (1981); A. Farnsworth, Contracts sec. 710, at 492-93 (1982)." *United Airlines, Inc.*, 116 Ill. 2d at 318-19.

In reading the settlement agreement as a whole, this court finds that the parties wanted an amicable settlement of all property rights involved. Although the deceased agreed to one-half of the unwaived pension plan, her consent to the division was unnecessary in light of this court's holdings that a pension, up to the amount accumulated during the pendency of the marriage, is marital property subject to division. (*In re Marriage of Hackett* (1986), 113 Ill. 2d 286, 292.) This court finds that the language of the contract as a whole reveals that when the parties agreed to the division at the time of retirement, they intended to provide security for their later

years. The condition that the deceased be unmarried at the time of respondent's retirement reflects an intention to provide security for her. Otherwise, if she had remarried, her new spouse was to provide that security. Of significance is the fact that the parties did not contemplate or include in their agreement unforeseen circumstances such as death, early disbursement by Sears, not by respondent, or stock splits. The oversight only reveals a clearer intent of the parties that respondent was to give the deceased one-half of the value of the 559.39 shares at the time of disbursement for whatever reasons. At the time of the dissolution, the parties believed the logical time for disbursement was at respondent's retirement since the pension plan was established and paid into during the pendency of the parties' marriage for their retirement years. In light of these facts, it is also understandable that the parties neither contemplated nor considered the possibility of one party having absolute control over the proceeds during the period prior to retirement without the other party's knowledge or assent. Nothing in the language of the contract even suggests that either party should have sole and exclusive control of the pension plan without the other's knowledge or consent. The only intention reflected in the contract is that Sears, Roebuck & Company would have sole control over the stocks regarding the decrease or increase of value and, in this case, stock splits. Both parties took a risk of losing all the stocks by the time of retirement. Since the parties' only intention at that time was to risk having Sears control the value of stock in the hope of having security in their later years, this court finds that the underlying intent of the parties was to divide the cash at the time of disbursement contingent on the remarriage of the deceased. Thus this court finds that at the time respondent withdrew the stocks for cash, the

deceased was entitled to one-half of the stock priced at the time of the disbursement.

Next, this court must determine how many stocks the estate of the deceased is entitled to receive. It is well established that a stock split is a corporate act as authorized by the Business Corporation Act of 1983 (Ill. Rev. Stat. 1985, ch. 32, par. 6.25(b)). No action on the part of respondent caused the stock split. Since the general rule regarding division of the pension together with the agreement provides that the deceased is entitled to one-half of the stocks accumulated during the pendency of the marriage less any amount that respondent added before the marriage or after the dissolution, the estate of the deceased in this case is entitled to one-half of 1118.78 shares valued at the date of disbursement—$17.625 per share, for a total of $9,859.25.

This court finds that when respondent received a cash disbursement of the pension plan, he should have honored the settlement agreement and the divorce decree. Since the estate was obligated to bring this suit and appeal to enforce the decree and agreement, the estate of the deceased is entitled to recover attorney fees. Ill. Rev. Stat. 1985, ch. 40, par. 508(a)(2).

For the foregoing reasons, the judgments of the appellate court and the circuit court are reversed and this cause remanded to the circuit court of Du Page County for entry of judgment in favor of the estate in the amount of $9,859.25 and for a hearing to determine the amount of attorney fees.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded*
*with directions.*