655 N.E.2d 1 (1995)
274 Ill.App.3d 653
211 Ill.Dec. 341
Maria DOW, Plaintiff-Appellant,
v.
COLUMBUS-CABRINI MEDICAL CENTER, Defendant-Appellee.
No. 1-94-2044.
Appellate Court of Illinois, First District, Third Division.
June 14, 1995.
As Modified August 30, 1995.
Rehearing Denied August 31, 1995.
*2 David S. Allen of Jacobs, Burns, Sugarman, Orlove & Stanton, Chicago, for appellant.
Alan S. King of Gardner, Carton & Douglas, Chicago, for appellee.
Modified on Denial of Rehearing
Presiding Justice GREIMAN delivered the opinion of the court:
Plaintiff Maria Dow (Dow) was fired by defendant Columbus-Cabrini Medical Center (CCMC) for stealing company property worth $25. Dow brought suit against CCMC to recover $9,166.08, which represented the value of unused sick-day time and was available to employees meeting certain requirements, including that they retire from service. The trial court determined that Dow was not entitled to the above benefit because she was fired for cause rather than voluntarily retiring. Summary judgment was entered for CCMC, from which Dow now appeals.
The sole issue raised on appeal is whether an employer's personnel policy providing for payment of accumulated unused sick-days to employees who "retire" is available to an employee whose employment is terminated. Because we believe Dow is entitled to this sum, we reverse the trial court and enter judgment for Dow in the amount of $9,166.08, plus prejudgment interest of 5% per annum.
It was the Christmas season. A time for good will to all. CCMC planned to give each employee a gift certificate for $25 from Jewel Food Co. The certificates were to be awarded to CCMC employees a couple of days before Christmas.
A few weeks before the certificates were to be given, Dow, a 20 year employee of CCMC, appropriated, converted, and otherwise exercised dominion and control over the certificate she would have received. The record does not disclose precisely what she did with the proceeds of the purloined certificate, however, we may speculate that she may have purchased a toy or gift for a grandchild, a turkey, plums for the traditional plum pudding or, perhaps, some myrrh and frankincense.
Upon discovering this theft, CCMC discharged Dow on December 15, 1992, forcing her into retirement. In March of 1993, Dow requested and began receiving a pension under an early retirement program CCMC provided for its employees.
CCMC's personnel policies in effect during Dow's employment provided for payment to employees who retire from CCMC with unused, accrued sick days. Specifically, CCMC's Employee Handbook states:
"Employees who retire, and are immediately eligible to receive payment from the Employee Pension Plan, will be paid all unused sick days which have already been accrued."
Employees become eligible under the Pension Plan after five years of service and on or after their 55th birthday. Dow was eligible or vested in the Plan.
In March of 1993, Dow informed CCMC that she wished to begin receiving pension benefits under the CCMC Plan, and she has been receiving such benefits effective retroactively to January 1, 1993.
*3 Dow's accumulated sick days, when multiplied by her daily wage based on her then current hourly salary of $13.64 per hour, equal $9,166.08. CCMC declined to pay this sum, indicating that the benefit was not available to terminated employees.
In granting CCMC's Motion for Summary Judgment, the trial court found that (1) the definition of the term "retire" connotes a voluntary act by the individual employee; and (2) a person terminated for cause cannot be considered to have retired.
As a preliminary matter, Dow argues that CCMC's failure at trial to challenge whether the employee handbook and related documents represent an enforceable contract amounts to a waiver of that issue on appeal. As the appellee, CCMC may raise any argument or basis supported by the record to show the correctness of the judgment, even though it had not previously advanced such an argument. (American National Bank v. National Advertising Co. (1992), 149 Ill.2d 14, 171 Ill.Dec. 461, 464, 594 N.E.2d 313, 316.) A caveat to this rule is that the appellee's arguments must be commensurate with the issues presented at trial. Kravis v. Smith Marine, Inc. (1975), 60 Ill.2d 141, 324 N.E.2d 417, 420.
At issue is whether CCMC's employee handbook and related policy documents constitute an enforceable contract. CCMC has not waived consideration of this issue since the documents in question were admitted into evidence, and CCMC argued at trial that Dow was not entitled to sick-day benefits under the documents.
An employer's handbook or policy statement will create enforceable contract rights if it: (1) contains a promise clear enough that an employee would reasonably believe that an offer had been made; (2) is disseminated to the employee in such manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing to work after learning of the policy or statement. Duldulao v. St. Mary of Nazareth Hospital (1987), 115 Ill.2d 482, 490, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318.
The record indicates that an unambiguous offer was made by CCMC which Dow accepted. The promise to pay accumulated sick-day pay is certain, and Dow's continued employment after the promise was made at least suggests implied or presumed acceptance. The record is less clear, however, on the issue of dissemination. Although nothing in the record explicitly reveals to whom the policies were distributed, the record does permit reasonable inferences that Dow was aware of the sick-day policy, including the likelihood that Dow, a 20 year employee, would have been aware of an employee policy, routinely administered, and entitling her to over $9,000 in benefits. We find, therefore, that the standards for establishing the existence of binding contractual rights under Duldulao have been satisfied.
Dow next argues that the trial court erred in granting summary judgment in favor of CCMC based on its finding that an employee fired for cause cannot be considered to have "retired" as defined in the CCMC documents. In reviewing the propriety of summary judgment, an appellate court applies a de novo standard of review, (Block v. Lohan Associates, Inc. (1993), 269 Ill. App.3d 745, 206 Ill.Dec. 202, 212, 645 N.E.2d 207, 217) and considers anew the facts and law related to the case. Shull v. Harristown Township (1992), 223 Ill.App.3d 819, 824, 166 Ill.Dec. 142, 145, 585 N.E.2d 1164, 1167.
This court's role in interpreting an employer's enforceable personnel policy is the same as its function in interpreting a contract. (Mitchell v. Jewel Food Stores (1990), 142 Ill.2d 152, 154 Ill.Dec. 606, 568 N.E.2d 827.) A court's objective when enforcing a contract is to ascertain and effectuate the parties' intent. In re Marriage of Olsen (1988), 124 Ill.2d 19, 123 Ill.Dec. 980, 528 N.E.2d 684.
It should be noted that CCMC's counsel initially conceded at oral argument that an employee discharged by reason of a plant closing would be entitled to CCMC's sick-day bonus; although counsel later qualified his *4 statement that such a discharge would not "retire" the employee.[1]
The manual does not distinguish between retirement occasioned by firing for cause and firing because of the company's economic problems, although counsel does suggest that "for cause" must be read into the sentence. Similarly, CCMC's argument renders "mandatory retirement" an oxymoron.
Unless the agreement unequivocally specifies special meanings, the court must interpret the words of the contract with their common and generally accepted meanings. USG Interiors, Inc. v. Commercial and Architectural Products, Inc. (1993), 241 Ill. App.3d 944, 182 Ill.Dec. 277, 609 N.E.2d 811. As the above rules of construction indicate, and as both parties urge, this court must give effect to the common and generally accepted meaning of the word "retire" as used in CCMC's employee policies. Interestingly, the parties agree that the accepted definition was recently articulated by the Seventh Circuit: "retire means to leave employment after a period of service * * * to withdraw from one's position or occupation; to conclude one's working or professional career." Meredith v. Allsteel, Inc. (7th Cir.1993), 11 F.3d 1354, 1358; quoting Webster's Ninth New Collegiate Dictionary 1007 (1986).
Dow, being over 55 and a 20 year employee, is eligible to receive early retirement benefits under CCMC's pension plan. Nevertheless, CCMC contends that Dow is ineligible for the sick-day bonus because her employment ended by termination rather than "retirement." Thus, although Dow is receiving retirement benefits under CCMC's pension plan, she has been denied an otherwise earned benefit because, according to CCMC, she has not retired. There is clearly an inconsistency where, under two related policies which make reference to one another, a terminated employee is considered "retired" for some purposes but denied the status for others.
Moreover, CCMC's reliance on the trial court's definition of "retirement" is misplaced. Retirement is a status which distinguishes individuals who have achieved it from the class of active employees. Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co. (1971), 404 U.S. 157, 180-81, 92 S.Ct. 383, 398-99, 30 L.Ed.2d 341; see also Bidlack v. Wheelabrator Corp. (7th Cir.1993), 993 F.2d 603, 609.
The view that retirement is a status distinct from active employment has been adopted in Illinois. (Nolan v. City of Granite City (1987), 162 Ill.App.3d 187, 191, 113 Ill.Dec. 185, 189, 514 N.E.2d 1196, 1200 ("retirement customarily is understood to mean having attained an age at which further regular employment is not contemplated"). For examples of statutory definitions: The Employee Retirement Income Security Act of 1974 (ERISA) defines a "pension plan" as one which "provides retirement income to employees." (29 U.S.C. sec. 1002(2)(A)(i) (1988).) ERISA's minimum vesting standards provide that "each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." (29 U.S.C. sec. 1053(a) (1988).) The Judges Retirement System of Illinois makes benefits available to a judge "whose employment * * * is terminated, regardless of age or cause", and conditions pension eligibility upon the participant "not receiving or being entitled to receive * * * any salary from an employer for service currently performed." 40 ILCS 5/18-124(4) (West 1993).
*5 Retirement is not exclusively the act of concluding one's employment, but is also a status based on age and length of service which distinguishes an employee from the class of active employees. Moreover, the act of retirement is itself neutral, and may be either voluntary or mandatory. (See Vance v. Bradley (1979), 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171; Massachusetts Board of Retirement v. Murgia (1976), 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520.) Therefore, the fact CCMC discharged Dow does not preclude a finding that she "retired" from her employment and is entitled to all retirement benefits, including her sick-day bonus.
A contract is ambiguous if it is susceptible to more than one meaning. (Bishop v. Lakeland Animal Hospital (1994), 268 Ill.App.3d 114, 205 Ill.Dec. 817, 644 N.E.2d 33.) Normally, where the trial court determines that an ambiguity exists, its subsequent construction of the contract will not be disturbed on review unless it is against the manifest weight of the evidence. (Myers v. Popp Enterprises, Inc. (1991), 216 Ill. App.3d 830, 159 Ill.Dec. 783, 576 N.E.2d 452.) In the instant appeal, however, the trial court made no finding of ambiguity, and we owe no such deference to its contract interpretation.
However, had there been an ambiguity resulting from CCMC's failure to clarify or designate precisely the meaning of the term "retire," such ambiguity would be construed against it and in Dow's favor, particularly given the incongruity of Dow's receiving pension benefits upon her retirement while being denied sick-day retirement benefits.
The Interest Act provides that prejudgment interest may be awarded where, as here, the amount due is liquidated and readily ascertainable. (815 ILCS 205/2 (West 1993).) Such interest will be calculated from the date of Dow's retirement from CCMC, December 15, 1992, when she became entitled to the sick-day benefit, to this date. 815 ILCS 205/2 (West 1993).
In its petition for rehearing, CCMC argues, for the first time, that Dow was not an employee at the time she retired and was, therefore, ineligible for a sick-time retirement bonus. We find that CCMC has waived this argument by failing to raise it prior to its petition for rehearing. (134 Ill.2d R. 341(e)(7), and (f); see also Groark v. Thorleif Larsen & Son, Inc. (1992), 231 Ill. App.3d 61, 172 Ill.Dec. 799, 596 N.E.2d 78.) We note, however, that on the very day Dow's employment was terminated, she requested her "pension benefits," invoking her retirement status on that date and not "retroactively" as suggested by CCMC.[2]
For the reasons set forth above we reverse the grant of summary judgment in defendant's favor and enter judgment for plaintiff in the amount of $9,166.08, plus prejudgment interest, pursuant to Supreme Court Rule 366. 134 Ill.2d R. 366.
Reversed.
RIZZI and TULLY, JJ., concur.
NOTES
[1] The audio tape of the oral argument in this matter reveals the following exchange:

"The Court: If the Company went out of business, would she get the PTO?
Mr. King: I would say, yes.
The Court: Careful.
Mr. King: That's a very good hypothetical. That's difficult. She was terminated, and she did not retire ...
The Court: Unless you interpret retirement broadly to say that, yes, she did retire when the company goes out of business because she can no longer work.
Mr. King: Yes.
The Court: Do you interpret ... is the retirement provision satisfied under that circumstance?
Mr. King: I would say, no, and perhaps that even emphasizes some greater unfairness, but I think sticking to the law and the plain meaning of retirement I certainly think we would be justified in saying ...
The Court: You might lose that case, I don't know about this one, but that one, I kinda' think you would lose that one.
Mr. King: I agree with you."
[2] CCMC's Exhibit A is an internal CCMC memorandum written by CCMC vice-president Kurt E. Vining entitled "Investigation Regarding Maria Dow and the Jewel Gift Certificate." The memorandum discusses Mr. Vining's investigation of Maria Dow, and includes the following account:

"Approximately forty-five minutes to one hour later, Kathy Link and myself met with Maria Dow. At that point I told her that she was being terminated for cause, effective immediately.
Her response was, "Okay, then I will take my pension." I told her we would notify David Heneghan of her desire and that he would contact her to arrange for her pension to begin, and for her to receive accrued PTO benefits."