2020 IL App (1st) 191960-U

Third Division
March 10, 2021

No. 1-19-1960

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| KATHERINE MORSBACH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 L 11499 |
| | ) | |
| MATTHEW J. EISLER, | ) | Honorable |
| | ) | Jerry Esrig, Judge, presiding. |
| Defendant-Appellant. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Howse and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. Circuit court properly ruled that plaintiff did not anticipatorily repudiate amended settlement agreement.

¶ 2    Defendant Matthew Eisler appeals from an order of the circuit court that enforced, and found Eisler in breach of, an amended settlement agreement between Eisler and plaintiff Katherine Morsbach. Eisler claims that Morsbach anticipatorily repudiated the amended settlement agreement and, as a result, Eisler was justified in discontinuing his payments under that settlement.

¶ 3    We find no basis to conclude that Morsbach anticipatorily repudiated this settlement agreement and thus affirm the trial court's judgment.

¶ 4                                   BACKGROUND

¶ 5     The facts underlying this lawsuit are complicated, and the post-suit settlement that spawns this appeal more convoluted still. We will try to cut through some of the fat and present only the facts that are pertinent to this appeal.

¶ 6                              I. Pre-Litigation History

¶ 7     In the winter of 2006, Hans Morsbach, Katherine's husband, owned property located at 2610 North Halsted Street in Chicago. On November 20, 2006, Hans agreed to lease the property to an entity called Corner Pocket Corp. Corner Pocket intended to use the leased premises to operate a Notre Dame themed bar.

¶ 8     "In order to induce" Hans to enter into the lease agreement, two of Corner Pocket's officers, Michael Klauer and Eisler, and its corporate parent, a company named Victory Liquors, LLC, tendered a personal guaranty to Hans. The guaranty stated that Klauer and Eisler agreed "jointly and severally" to "pay and perform, as the primary obligor, all liabilities, obligations and duties imposed upon [Corner Pocket]" under the terms of the lease agreement.

¶ 9     In May 2011, Hans died. The 2610 North Halsted Street property passed to Katherine, who became its sole owner. (Given the death of Hans, leaving Katherine as the sole plaintiff here, from here on out we will refer to her by her last name, Morsbach, just as we refer to defendant as Eisler.)

¶ 10    To make a long story short(er), Corner Pocket ceased operations in June 2011 and was over $95,000 in arrears on rent, interest, fees and the like to Morsbach. Corner Pocket tried to sell its business to a third-party and use the proceeds to pay its debt to Morsbach. In exchange, Corner Pocket, Klauer, and Victory Liquors entered into an Agreement and Confession of

Judgment with Morsbach for $95,209.75, plus interest and amounts for "rents coming due after the date of this Agreement."

¶ 11    Ultimately, however, Corner Pocket was unable to procure a buyer for itself. And neither Klauer, Victory Liquors, nor Corner Pocket paid any of the amount due under the Agreement and Confession of Judgment. By November 1, 2014, the amount due under the Agreement and Confession of Judgment had ballooned to $311,184.07, which included amounts for interest and late charges.

¶ 12                                    II. This Lawsuit and Settlement

¶ 13    In November 2014, Morsbach filed two lawsuits. One was directed at the confessors of judgment (Klauer, Corner Pocket, and Victory Liquors) and is not relevant here. The second was the lawsuit at issue here, which Morsbach filed against Eisler to enforce the limited guaranty he signed. Morsbach sought $117,600 in damages against Eisler.

¶ 14    In June 2016, Eisler and Morsbach filed cross-motions for summary judgment. On September 8, 2016, the circuit court denied Eisler's motion and granted Morsbach summary judgment on the issue of liability. The court found a question of fact on the issue of damages, namely Eisler's claim that Morsbach failed to mitigate her damages.

¶ 15    That September, Morsbach and Eisler reached a purported settlement agreement, which we will refer to as the "Original Settlement Agreement." The Original Settlement Agreement gave Eisler one of two payment options at his election—(i) pay $130,000 over thirteen monthly installments of $10,000 or (ii) pay $144,000 over twenty-four monthly installments of $6,000. He was required to irrevocably elect one of the two options by a date certain—September 15, 2017. If he did not make an election by that date, Morsbach could elect for Eisler, and Eisler would be bound to that election.

¶ 16    The parties did not agree, however, on two items. One was the monetary sanction in the event of a default. Morsbach wanted, in the event of Eisler's default, to be immediately awarded the original amount to which she believed she was entitled, plus interest: $173,870. Eisler, on the other hand, wanted the default to require him to immediately pay all remaining unpaid amounts due under the settlement terms. The parties also disagreed on the amount of security interest Eisler would have to provide for the settlement. We will call these disputed terms, as do the parties, the "default provisions."

¶ 17    Given the disagreement over the default provisions, Eisler never executed the Original Settlement Agreement. Nevertheless, in light of the parties' representations (we lack a transcript), the circuit court dismissed the case pursuant to settlement.

¶ 18    The date of September 15, 2017 came and went without Eisler electing either of the payment provisions. But Eisler persuaded Morsbach to agree to a different payment schedule that called for Eisler to pay her $159,000 over 24 months, with the first 12 monthly payments of $2,250 and the last twelve payments in monthly increments of $11,000. We will refer to this agreement as the "Amended Settlement Agreement."

¶ 19                    III. First Motion to Enforce Settlement Agreement

¶ 20    In February 2018, Morsbach filed a motion to enforce the Original Settlement Agreement. In that motion, Morsbach acknowledged that Eisler "never executed" that agreement and noted that Eisler failed to elect a payment plan by September 15, 2017, instead "request[ing] a modification to the payment schedule." But he never signed that Amended Settlement Agreement, so it was unenforceable. Thus, Morsbach said, she asked the court to enforce "the terms of the [Original] Settlement Agreement including finding Eisler in default and entering judgment in favor of Morsbach and against Eisler" for $173,870.

¶ 21    Eisler responded with two points. First, as Morsbach acknowledged, he never signed the Original Settlement Agreement, given the disagreement over the default provisions. Second, as Morsbach also had referenced, the parties had modified the Original Settlement Agreement during the period of September and October 2017. Eisler claimed he was honoring the Amended Settlement Agreement, though he acknowledged that had not signed *that* agreement, either, given the continuing dispute over the default provisions.

¶ 22    The circuit court denied Morsbach's motion to enforce the Original Settlement Agreement. For one thing, the court noted, both Morsbach and Eisler agreed that they had modified the payment terms, that Eisler was current on those payments, and that Morsbach was accepting those payments. Thus, Morsbach had not identified any default by Eisler.

¶ 23    The court also denied Morsbach's alternative relief to vacate the dismissal of the case and reinstate it. The court did so for two reasons. One, because Morsbach had been accepting payments from Eisler, notwithstanding their disagreement on the default provisions and Eisler's failure to execute the agreement, "Morsbach cannot now claim that there is no agreement." The court reasoned that the failure to agree on the default provision "does not mean that they had no enforceable settlement agreement." The court cited case law for the proposition that a contract may be enforceable even if it fails to provide for every collateral matter or possible future contingency that might arise. See *Lankton-Ziegle-Terry & Associates, Inc. v. Griffin*, 156 Ill. App. 3d 765, 766 (1987).

¶ 24    And the second reason for denying the alternative request to vacate the dismissal order was that "Morsbach is not entitled to have the dismissal vacated and the case reinstated because she has not filed a proper petition under section 2-1401 of the Illinois Code of Civil Procedure." See 735 ILCS 5/2-1401 (West 2016).

¶ 25      IV. Motion to Clarify and Section 2-1401 Petition to Vacate Dismissal

¶ 26      Morsbach then filed two motions. One, the section 2-1401 petition to vacate the settlement that the circuit court had mentioned. The other, a motion to clarify.

¶ 27      In the motion to clarify, Morsbach asked the court to "clarify" that the terms of the Original Settlement Agreement governed, which in her view included everything except the disputed default provisions. Morsbach also asked the court to order Eisler to sign that agreement, minus those two disputed provisions.

¶ 28      In the 2-1401 petition she simultaneously filed, Morsbach asked the court to vacate its September 2016 order dismissing her case against Eisler based on settlement. Morsbach acknowledged both the Original Settlement Agreement and the Amended Settlement Agreement but emphasized that Eisler had "refused, and continues to refuse, to execute either the [Original Settlement Agreement] or [Amended Settlement Agreement] ***." She argued that these unexecuted agreements, which by their terms (24 monthly payments) could not be completed within a year, were barred by the Statute of Frauds. See 740 ILCS 80/1 (West 2016). Referencing her motion to clarify, which sought to clarify the court's understanding of the terms of the agreement, Morsbach wrote: "If the Court concludes there has been no meeting of the minds and no agreement, then plaintiff requests that this Court vacate the dismissal [order] and set the matter for prove-up."

¶ 29      On August 14, 2018, Eisler responded to both motions, stipulating to the reinstatement of the lawsuit and arguing that this stipulation rendered the motion to clarify moot.

¶ 30      V. Morsbach's Motion for Summary Judgment

¶ 31      On the assumption that the court would vacate the dismissal order and reinstate the case, Morsbach filed a motion for summary judgment as to damages. In that motion, Morsbach alleged

that from November 1, 2017 to the end of August 2018, Eisler had paid her a total of $22,500 in ten monthly installments of $2,250. Morsbach calculated her damages at $175,927. Morsbach again acknowledged that "[i]n October 2017, the parties orally agreed to a modification of the payment provision of the initial settlement agreement," but when Morsbach presented Eisler with a written memorialization of that agreement, Eisler again refused to execute it.

¶ 32    On September 20, 2018, faced with this flurry of motion practice, the court did several things by order. First, it denied the motion to clarify. Second, the court entered and continued the section 2-1401 petition and motion for summary judgment. Third, the trial court, apparently told by Morsbach that a second motion to enforce was forthcoming, gave her a deadline to file that second motion to enforce and gave Eisler time "to file his response to the 2-1401 petition & motion to enforce."

¶ 33                VI. Second Motion to Enforce Settlement Agreement

¶ 34    On October 3, 2018, Morsbach filed the promised second motion to enforce. Morsbach claimed the Amended Settlement Agreement was a legal nullity because the Original Settlement Agreement contained a modification clause specifying that modifications had to be signed and in writing, and Eisler had refused to sign the Amended Settlement Agreement.

¶ 35    Morsbach further argued that Eisler's refusal to sign the Original Settlement Agreement, due to the parties' inability to agree to the default provisions, could not operate to invalidate the Original Settlement Agreement because the agreement contained a provision stating: "The provisions of this Agreement are severable, and no provision shall be affected by the invalidity of any other provision." Morsbach thus concluded that the modified payment term contained in the Amended Settlement Agreement was unenforceable.

¶ 36    Morsbach further contended that, because defendant never made an election under the Original Settlement Agreement, she had exercised her right to elect and chose option (a), which required Eisler to pay Morsbach $130,000 in thirteen equal monthly installments. Morsbach asked that the court enforce the Original Settlement Agreement, find Eisler in default, and enter judgment in her favor for $175,927.

¶ 37    After this filing by Morsbach in October 2018, Eisler ceased making payments under the Amended Settlement Agreement. He made no payments beginning November 2018.

¶ 38    On November 13, 2018, Eisler filed a 2-619 motion to dismiss the section 2-1401 petition and a response to her second motion to enforce. In that filing, Eisler maintained that the Original Settlement Agreement was unenforceable as a matter of law under the Statute of Frauds, because the agreement could not be performed within one year.

¶ 39    On December 21, 2018, Morsbach filed a reply in support of her Motion to Enforce. Morsbach argued that the Statute of Frauds did not apply to invalidate the Original Settlement Agreement because: (1) Morsbach performed her obligations by voluntarily dismissing her suit against Eisler; (2) the parties had admitted to the terms of the agreement before the court; (3) Eisler admitted entering into the agreement; and (4) Eisler was estopped from asserting the statute of frauds.

¶ 40    On February 15, 2019, the court held a hearing on Morsbach's second motion to enforce. The record does not contain a transcript of the hearing. The court granted Morsbach's motion in a written order stating:

"(1) That Morsbach's Motion to Enforce is Granted. The Court finding that the Statute of Frauds is inapplicable for the reasons set forth on the record which is incorporated herein by reference, including that Morsbach fully performed her obligations, the terms of the

agreement were presented to the Court orally and in papers, Eisler waived the statute of frauds as a defense, and Eisler is estopped from asserting the statute of frauds; and

(2) The Defendant, Eisler, is ordered to pay to Morsbach Forty-one thousand seven hundred fifty dollars ($41,750.00) within (7) days hereof, on or before February 22, 2019, and is required to make all further payments required by the Amended Settlement Agreement & Release."

¶ 41    On February 22, 2019, Eisler filed a motion to reconsider. In that motion, Eisler argued that Morsbach anticipatorily repudiated the Amended Settlement Agreement by filing two motions to enforce the Original Settlement Agreement.

¶ 42    On March 26, 2019, the court entered a written order denying Eisler's motion to reconsider and granting Morsbach's Motion for Judgment. The order read:

"(1) The motion to reconsider is denied; court finds it has jurisdiction and there is no repudiation of the amended settlement agreement;

(2) Judgment is entered against Matthew J. Eisler, and in favor of Morsbach E. Morsbach, in the amount of $159,000.00 minus those amounts previously paid of $27,000.00, for a total of $132,000.00, plus an award of interest in accordance with paragraph 2(B) of the amended settlement, in the amount of $19,755.18, for a grand total judgment of $151,755.19."

¶ 43    On April 5, 2019, Morsbach filed a fee petition, to which Eisler responded. On August 27, 2019, the court granted the petition for $12,812.61. This appeal followed.

¶ 44                                    ANALYSIS

¶ 45    On appeal, Eisler claims the circuit court erred by granting the second motion to enforce. He claims that the court should not have enforced the Amended Settlement Agreement because

Morsbach anticipatorily repudiated that agreement by continuing to litigate the case in favor of the Original Settlement Agreement—and by continuing to litigate, period, which defeated the point of the Amended Settlement Agreement, to secure "peace" and forgo litigation.

¶ 46                                                    I

¶ 47    We must address a couple of issues before we reach the merits. They concern two attempts by Morsbach to essentially deny substantive review of the issue raised by Eisler on appeal. They are interrelated in that they both concern, to some extent, the lack of a supporting record, but they deserve separate attention.

¶ 48    First, the parties disagree on the standard of review. Morsbach, the appellee, says that our review of the court's ruling is subject to a highly deferential manifest-weight standard, because the court below heard evidence. See *Kelly v. Orrico*, 2014 IL App (2d) 130002, ¶ 27. Eisler says our review is *de novo*, as no such evidentiary hearing was held, and the court ruled strictly on the papers. See *City of Chicago v. Ramirez*, 366 Ill. App. 3d 935, 946 (2006) (motion to enforce settlement is akin to motion for summary judgment, subject to *de novo* review if decision is "made on the motion pleadings and attachments, without holding an evidentiary hearing").

¶ 49    We asked the parties to elaborate on their disagreement over the existence or non-existence of an "evidentiary hearing." Counsel for Morsbach said the trial court asked questions of the lawyers (who were also affiants to affidavits attached to the papers) and questioned them not only on the submitted papers but more generally on the facts of the case. But the lawyers agree that no questions were asked under oath, as would typically be the case of fact witnesses.

¶ 50    We appreciate that the parties had differing understandings of the definition of an "evidentiary hearing." In our view, absent live, sworn testimony, any statements made about the case would fall under the rubric of oral argument and not on fact testimony. Thus, it would seem

that no "evidentiary hearing" occurred as we understand that phrase. But we will not pursue the matter further, because it will ultimately make no difference, for two reasons.

¶ 51    One, the specific argument Eisler is making is a purely legal one. He claims that, by filing her flurry of motions arguing against the enforceability of the Amended Settlement Agreement, Morsbach was violating the whole purpose of that agreement—to secure peace from litigation. He considered those motions a "repudiation" of the Amended Settlement Agreement, and that is why he stopped making payments pursuant to that agreement in November 2018.

¶ 52    Nobody disputes that he stopped paying in November 2018. And the motions Morsbach filed are all in the record. With no disputed questions of fact, all that is left is for us to apply the law to those facts. So our review is *de novo*. See *Truman L. Flatt & Cons Co. v. Schupf*, 271 Ill. App. 3d 983, 986 (1995) (anticipatory repudiation is question of law if facts undisputed).

¶ 53    The second reason we need not further consider what happened at these hearings is that our result would be the same under either the manifest-weight or *de novo* standard of review.

¶ 54    For those same reasons, we will leave aside Morsbach's emphatic attempts to deny review of Eisler's argument altogether, because transcripts are lacking in the record. See *Webster v. Hartman*, 195 Ill. 2d 426, 433–34 (2001) (absent transcript of proceedings, court could not review whether trial court's factual finding that settlement occurred was manifest error); *Foutch v. O'Bryant*, 99 Ill. 2d 389, 393-94 (1984) (absent transcript, court could not review denial of motion to vacate for abuse of discretion).

¶ 55    Again, regardless of whether an "evidentiary hearing" occurred as we define it, we can review Eisler's purely legal argument without a transcript. True, we would *prefer* to know the able and experienced trial judge's thoughts when he ultimately made his legal ruling on Eisler's anticipatory-repudiation argument. But our review of that decision is plenary; we perform the

same function on appeal as the trial court; we owe no deference to its decision; we make our decision independent of the trial court's reasoning. The absence of a transcript does not preclude review. See *Fields v. Schaumburg Firefighters' Pension Bd.*, 383 Ill. App. 3d 209, 223 (2008) ("Even though the order on appeal does not disclose the court's specific reasoning for resolving the cross-motions for summary judgment ***, and we were not given a transcript of the hearing from which we might discern the court's reasoning, we proceed without hesitation because the entry of summary judgment is to be reviewed on a *de novo* basis."); *Gonnella Baking Co. v. Clara's Pasta di Casa, Ltd.*, 337 Ill. App. 3d 385, 388 (2003) ("Because we are not required to defer to the trial court's reasoning on *de novo* review, the transcripts of the hearings on the motion to dismiss are unnecessary.").[1]

¶ 56                                                    II

¶ 57    To the merits.  Eisler says that, in her legal filings, in which she repeatedly argued for the enforceability of the Original Settlement Agreement, Morsbach anticipatorily repudiated the Amended Settlement Agreement, destroying the very purpose of the amended agreement—to put an end to litigation.

¶ 58    "Anticipatory repudiation of a contract arises through 'a manifestation by one party * * * of an intent not to perform its contractual duty when the time comes for it to do so even if the other party has rendered full and complete performance.' " *In re County Treasurer & ex officio County Collector of Kane County, Illinois*, 2018 IL App (2d) 170418, ¶ 39 (quoting *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1031 (2007)). "The

---

[1] Morsbach also made a forfeiture argument that counsel now seeks to withdraw. Morsbach had argued that a particular document was absent from the record but now acknowledges that the document was not missing. We accept counsel's representation that the error was inadvertent.

expression of the intent not to perform must be 'definite and unequivocal.' " *Id.* (quoting *In re Marriage of Olsen*, 124 Ill. 2d 19, 24 (1988)).

¶ 59    That is an exceedingly high bar to clear. "Anticipatory breach is not a remedy to be taken lightly." *Id.* at 25. As our supreme court explained in *Olsen*:

> "The failure of the breaching party must be a total one which defeats or renders unattainable the object of the contract. [Citation.] That intention must be a definite and unequivocal manifestation that he will not render the promised performance when the time fixed for it in the contract arrives. [Citation.] Doubtful and indefinite statements that performance may or may not take place are not enough to constitute anticipatory repudiation." *Id.* at 24.

¶ 60    Eisler points to the fact that, at various times in the post-dismissal litigation, Morsbach sought to enforce the Original Settlement Agreement and argued that the Amended Settlement Agreement was unenforceable. That, he says, shows that Morsbach had repudiated the Amended Settlement Agreement itself and the very purpose of it—to *end* litigation, not continue it.

¶ 61    We should begin by reviewing the positions Morsbach took in her filings. Originally, of course, she sued Eisler over his personal guaranty and moved for summary judgment. She was granted summary judgment on liability but not on damages, the court finding a question of fact remaining on the issue of mitigation of damages. So her expedited path was blocked.

¶ 62    She settled, or tried to settle, with Eisler, giving him two different options for a payment schedule—this was the Original Settlement Agreement. Eisler wouldn't sign because of their disagreement over the default provisions. And Eisler then asked for a third, different payment schedule that contained much lower monthly payments on the front end ($2,250) and higher ones on the back end ($11,000). This was the Amended Settlement Agreement, though it was never

signed, either. Presumably under the theory that something is better than nothing, Morsbach started accepting these payments.

¶ 63    She never denied that she was accepting those payments. When she filed her first motion to enforce—to enforce the Original Settlement Agreement, that is—Morsbach plainly laid out that she and Eisler "agreed to a modified payment schedule which was incorporated into an Amended Settlement Agreement and Release, a copy of which is attached hereto as Exhibit C." She likewise noted, as with the Original Settlement Agreement, that "Eisler has refused to execute the Amended Settlement Agreement and Release."

¶ 64    We won't presume to know the thinking of Morsbach or her counsel, but it seems clear enough that the problem was that Eisler wouldn't sign *any* settlement agreement, and she was of the mind that to be enforceable, it had to be a signed writing. And given her choice, she obviously preferred the Original Settlement Agreement.

¶ 65    In the alternative, she argued, the trial court should find that no settlement occurred and vacate the previous dismissal of the lawsuit that was based on the (unsuccessful) settlement.

¶ 66    Eisler, in response, clung to the Amended Settlement Agreement; he said it was enforceable and he was complying with it.

¶ 67    In reply, Morsbach expressed confusion, if not dismay, over Eisler's position. The Original Settlement Agreement required that any amendment be in a signed writing, and Eisler hadn't signed the Amended Settlement Agreement, either. By way of example, Morsbach wrote in that reply:

> "So which is it? Was there an original agreement? Was it modified? *** But if there was no enforceable contract to begin with, what are they modifying? Or are the parties simply continuing negotiating the terms of an original agreement? Defendant

asserts that the parties 'agreed to a modified payment schedule.' [Citation.] This begs the question, how do you modify a term of an agreement that doesn't exist?"

¶ 68    She summarized as follows:

"Ultimately, this Court must decide the following questions: Did the parties reach a settlement agreement as memorialized in the 2016 agreement? If the answer is no, then there is no agreement and the Court should reinstate the case and set the matter for prove[-]up as to Plaintiff's damages as summary judgment on liability was previously granted in favor of Plaintiff. If the answer is yes, then was the agreement modified in writing signed by the parties as required by section 15 of the 2016 agreement? The obvious, and only answer to that is no—Eisler admits he refused to sign the Amended Settlement Agreement. This leaves the Court with two options: first, either Eisler is in default of his obligations under the 2016 agreement and judgment should be entered against him; or second, there is no agreement and the matter should be reinstated and set for prove-up."

¶ 69    The trial court ultimately ruled that, "[b]ecause Morsbach has not proved, or even offered admissible evidence, that *either* of the proposed settlement documents represents an agreement reached by the parties, the court will not enforce *either* the Original Agreement *or the Amended Agreement*." (Emphasis added.) Instead, the trial court ruled that an enforceable oral agreement existed only insofar as the parties agreed to the monthly payment schedule currently in place—Eisler paying and Morsbach accepting—which to that point, Eisler had not breached. Thus, the first motion to enforce was denied.

¶ 70    The trial court also denied the request to vacate the dismissal based on settlement, for two reasons. First, the existence of an enforceable oral contract as described above. And second, because Morsbach had not filed a section 2-1401 petition to vacate.

¶ 71    So Morsbach took the judge's cue and filed a section 2-1401 petition to vacate, along with a motion to "clarify" the trial court's ruling. In her motion to clarify, she took another shot at breathing life into the Original Settlement Agreement, asking the court to "clarify" that the original terms governed, minus the disputed default provisions. (Sounds a lot more like a motion to reconsider than a "clarification," but that is beside the point.)

¶ 72    The section 2-1401 petition was basically another way of trying the same thing. Specifically referencing the motion to clarify, Morsbach argued that, if the Original Settlement Agreement governed, so be it, but if not, then no settlement agreement existed, and the dismissal of the lawsuit should be vacated, and the lawsuit reinstated. Morsbach noted there that she "has been more than accommodating to Eisler's requests with regard to payment terms, only to be rebuffed by Eisler in his unreasonable refusal to execute the Release and Settlement Agreement and be bound thereby."

¶ 73    To both the motion to clarify and the section 2-1401 petition, Eisler answered with all of two paragraphs:

>       "1. Eisler stipulates to the reinstatement of this action for the purpose of scheduling a hearing on Morsbach's recoverable damages under the Limited Guaranty executed by Eisler on November 20, 2016 ***.
>
>       2. In view of the foregoing, Morsbach's request for clarification as to the Court's order dated July 6, 2018 is moot."

¶ 74    Before a ruling on either of these motions, Morsbach moved for summary judgment on the issue of damages. That motion obviously presupposed that the lawsuit would be reinstated, something to which Eisler had stipulated (see above paragraph) but on which the trial court had not yet ruled.

¶ 75    In the interim was the trial court's housecleaning order, entering and continuing various motions and setting briefing schedules. Though Eisler had already filed that two-paragraph response to the section 2-1401 petition, the court allowed Eisler to file a second, substantive response to the section 2-1401 petition. It is likewise clear that, at that hearing, Morsbach indicated she would file another (second) motion to enforce, because the court gave her a deadline for doing so and set a schedule for Eisler to respond to it.

¶ 76    And then we reach the second motion to enforce, which was styled as being "made in the alternative to" her section 2-1401 petition. There, Morsbach again argued that, if any enforceable agreement existed, it was the Original Amended Agreement, as any amendment to that agreement would require a signed writing.

¶ 77    That second motion to enforce was filed on October 3, 2018.

¶ 78    And to listen to Eisler, that was the last straw; he stopped making payments in November 2018. He says he did so because the whole point of the Amended Settlement Agreement was to have peace—to end litigation—and yet Morsbach persisted in litigating and claiming that the Original Settlement Agreement, or otherwise *no* settlement agreement, governed. By violating the very purpose of the Amended Settlement agreement—peace from litigation—Morsbach anticipatorily breached it.

¶ 79    We do not know why Eisler truly stopped making payments. But if he did so, as he claims, based on anticipatory repudiation, he was wrong to have done so. Morsbach's filings

were at times redundant and contradictory, but they came nowhere close to constituting a repudiation of the Amended Settlement Agreement.

¶ 80    For starters, we should note that the state of affairs between the two parties was less than clear and straightforward. We have two potential written settlement agreements, neither of them signed, the amended unsigned agreement spawned from the original unsigned one, rendering the amended one in violation of a term of the original one that required written, signed amendments—but then again, if the original one wasn't signed, it wasn't enforceable, so maybe that signed-amendment requirement wasn't, either, leading to the question of whether the unsigned amended agreement could be an enforceable amendment of an agreement that, itself, was not enforceable—

¶ 81    We will take a breath and stop there. Convoluted is an understatement.

¶ 82    And when this quagmire first arrived in court on the first motion to enforce, we saw no less than three different views on the matter. Morsbach argued that the Original Settlement Agreement controlled; Eisler said the Amended Settlement Agreement controlled; and the trial court found that *neither* controlled ("the court will not enforce *either* the Original Agreement *or the Amended Agreement*." (Emphasis added.)). Instead, the trial court apparently carved out only the modified payment schedule, which both sides were performing (Eisler paying, Morsbach accepting) and found that payment plan to be an enforceable oral agreement.

¶ 83    We are not reviewing that ruling, and it may well have been correct, but it is fair to say that it left Morsbach with some uncertainty (not to mention a lot less than she wanted). When parties settle a case, they impose all sorts of provisions protecting their downside—default provisions, confessions of judgment, acceleration clauses, waivers of service of process in the event of an enforcement action, liquidated damages, and the like—and the oral agreement the

trial court enforced seemed to contain none of those things. And regardless of who was right, Morsbach had viable questions that we quoted above concerning the enforceability of various other provisions. Was the court saying that only the payment schedule itself, and no other parts of either the Original or Amended Agreement, controlled? If so, that leads to an incredibly slimmed-down settlement agreement, to say the least.

¶ 84    As noted, an anticipatory repudiation requires a firm and unequivocal position that a party will not enforce its side of an agreement. When we typically encounter an anticipatory breach, the terms of the agreement are clear, and one party indicates, by word or deed, in no uncertain terms, that it will not perform its side of the bargain. See *Olsen*, 124 Ill. 2d at 24.

¶ 85    That's not what happened here. For one thing, nothing about this case was clear. More importantly, Morsbach wasn't refusing to honor her side of the bargain. She was still trying to figure out what the bargain *was*, and she was raising perfectly colorable arguments that the trial court's first take on the question was wrong. She did so in what was essentially a motion to reconsider that she called a motion to "clarify," and she likewise did so via a section 2-1401 petition to vacate, at the judge's prompting. All of that was done in an attempt to persuade the judge of what she believed was the correct outcome—one of two possibly correct outcomes, actually—either the existence of the Original Settlement Agreement or no agreement at all. Neither of those options included the existence of an enforceable *amended* agreement, as Eisler claimed, but that doesn't mean she "repudiated" that amended agreement. She just saw things differently. And she wanted an agreement of some sort in a signed writing, or barring that, the force of a judge's order behind it.

¶ 86    Parties seeking a legal ruling on the existence or terms of a settlement agreement are not "repudiating" that agreement. If that were true, then any litigation over the terms or existence of

a settlement agreement—which is *always* prompted by a desire to forgo future litigation—would be considered an anticipatory breach. That cannot be the law. Eisler cites no case law suggesting that it is. We cannot imagine that any exists.

¶ 87    A good-faith disagreement over the existence or terms of a settlement agreement, particularly when the issues are as convoluted as here, *should* be decided by a judge. If the litigation is frivolous, the opposing party can seek sanctions. See Ill. S. Ct. R. 137 (eff. Jan. 1, 2018). But to allow that opposing party to call it an "anticipatory repudiation," thereby relieving the opposing party of the obligation of all further performance, would turn the law on its head.

¶ 88    Nor is there any indication that Morsbach refused to be bound by the terms of the Amended Settlement Agreement if the trial court ruled them enforceable. Yes, she initially tried to convince the court otherwise, as was her right. But look no further than what happened when the court entered its judgment on the second motion to enforce. Morsbach didn't get everything she wanted. She wanted the Original Settlement Agreement enforced, and the court enforced an amended agreement, which meant less money for her. How did she respond?  Repudiation? Defiance? No. She defended that ruling when Eisler challenged it on a motion to reconsider. And she is defending it on appeal, too.

¶ 89    We see no basis whatsoever to find that Morsbach anticipatorily repudiated this settlement agreement.

¶ 90    Any error in the fee petition was not argued by Eisler. His theory presumes that if he wins the appeal, the fee order falls by the wayside, too. As we affirm the denial of the motion to reconsider, we have no basis to overturn the order awarding fees, either. We affirm both rulings.

¶ 91                                    CONCLUSION

¶ 92    The judgment of the circuit court is affirmed.

1-19-1960

¶ 93    Affirmed.