RICHARD LEAZZO *et al.*, Plaintiffs-Appellees, *v.* WILLIAM DUNHAM *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 80-632

Opinion filed May 5, 1981.

Charles J. Pesek, of Oak Brook, for appellants.

William J. O'Connor, of Chicago, for appellees.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Plaintiffs, Richard and Barbara Leazzo (hereinafter referred to as the buyers), brought this action against defendants William and Mary Dunham (hereinafter referred to as the sellers), and Sprafka Realty World, Inc., and Jack Carpenter Organization (hereinafter referred to as the real estate brokers), seeking the return of an earnest money deposit paid pursuant to a written contract to purchase real estate. The sellers filed a counterclaim seeking a declaration that the buyers had forfeited the earnest money. The real estate brokers filed a cross-claim against the sellers for their brokerage commissions. The circuit court of Cook County

found that the purchase contract had been terminated without fault of the buyers and entered judgment in favor of the buyers. The court also entered judgment in favor of the real estate brokers against the sellers in the amount of the brokerage commissions. The disputed issue is whether the sellers were guilty of an anticipatory breach of contract, thereby entitling the purchasers to rescind the written agreement and to regain the earnest money deposit.

On January 9, 1979, the buyers executed a standard form real estate contract for the purchase of property owned by the sellers. The contract provides that the seller was to deliver possession "at closing." The closing date specified in the contract was April 1, 1979, "or 20 days after notice that financing has been procured * * *[1] unless subsequently mutually agreed otherwise." The contract further provides that the seller agrees to pay the buyer the sum of $20 for each day the seller remains in possession between the time of closing and the time possession is delivered, and that "[t]ime is of the essence of this contract." Pursuant to the contract the buyers deposited $6,400 as earnest money with Sprafka Realty World, Inc.

The testimony reflects that in either February or March 1979 the sellers contacted their attorney, Michael J. Hayes, requesting that he negotiate an extension of the closing date because the sellers were unable to schedule movers to transport their belongings to Florida due to the "terrible winter." Hayes contacted the buyers' attorney, Thomas C. Bielinski, and requested an extension of the closing date. Bielinski orally agreed to extend the closing date, and in a letter addressed to Hayes, dated March 20, 1979, he wrote that the buyers "have agreed that April 12, 1979 will be an agreeable date to close * * *." The buyers had authorized Bielinski to extend closing and possession only until April 12, 1979, because they had subleased their apartment.

In either late March or early April the buyers met with the sellers at the premises to discuss the sale of various items of personal property. At this meeting the buyers were advised that the sellers could not deliver possession until either April 23, 1979, or May 1, 1979. The buyers responded that they had subleased their apartment for April 15, 1979, and would require possession before that date. The sellers responded that the matter would be settled peaceably. There was no further discussion of this matter by the parties, and all subsequent negotiations were conducted by their attorneys.

After their discussion with the sellers the buyers contacted Bielinski and informed him that possession would have to be delivered at closing,

---

[1] The record includes a letter from Talman Federal Savings and Loan Association addressed to the buyers and dated January 30, 1979, advising them that their mortgage loan had been approved.

and that they could not proceed with the closing if the sellers did not deliver possession. In a letter dated April 4, 1979, Bielinski advised Hayes that the buyers would not close any later than April 12, 1979. In a letter dated April 5, 1979, which was in response to Bielinski's March 20, 1979, letter, Hayes advised Bielinski that the sellers would be unable to close until April 20, 1979, and unable to deliver possession until April 23, 1979. Sellers were willing, however, to pay "the contract rental of $20.00 per day each day after closing * * *."

Hayes advised Bielinski on April 9, 1979, that April 12, 1979, was not an agreeable date for the sellers and requested an alternate date. Bielinski indicated that an alternate date was not possible. Hayes advised Bielinski of the scheduled closing by letter which was hand delivered by Hayes on April 10, 1979. On April 12, 1979, the sellers advised Bielinski that possession of the home could not be delivered until April 23, 1979. The buyers did not appear at the scheduled closing, and Bielinski advised the sellers that the buyers refused to close because possession was not available.

During cross-examination Hayes testified that Bielinski always spoke in terms of closing and possession when discussing performance of the contract. Hayes had explained to the sellers that the contract required closing and possession on the same date. Although it was the sellers' understanding that closing and possession are seldom the same date, no one had ever told them that they could disregard that provision of the contract requiring the delivery of possession at closing.

Hayes further testified that prior to April 1, 1979, sellers requested an extension of the closing date, but a new date was not agreed to prior to the April 1, 1979, closing date. Hayes did not respond to Bielinski's March 20, 1979, letter offering the extension to April 12, 1979, until April 5, 1979, at which time Hayes indicated that the sellers could not accept the extension offer to April 12, 1979.

The trial court found that prior to April 1, 1979, the sellers had informed the buyers that they would not deliver possession on April 1, 1979, and that such constituted an anticipatory breach of the sale contract, and that the parties never agreed on an alternative date.

■■ ■ An anticipatory breach occurs when a party to an executory contract manifests a definite and unequivocal intent prior to the time fixed in the contract that it will not render its performance under the contract when that time arrives. (*Keep Productions, Inc. v. Arlington Park Towers Hotel Corp.* (1977), 49 Ill. App. 3d 258, 265, 364 N.E.2d 939; *Hull v. Croft* (1907), 132 Ill. App. 509, 510; *Engesette v. McGilvray* (1896), 63 Ill. App. 461, 464; 17 Am. Jur. 2d *Contracts* §450 (1964); 4 Corbin, Contracts §973 (1951); 11 Williston, Contracts §1323 (3d ed. 1968).) In such a case the other party may treat the contract as ended. (*Keep Productions, Inc. v. Arlington Park Towers Hotel Corp.*; 4 Corbin,

Contracts §959 (1951).) Further, we note that whether a party has committed breach is a question of fact (*Executive Centers of America, Inc. v. Bannon* (1978), 62 Ill. App. 3d 738, 743, 379 N.E.2d 364; 12 Ill. L. & Prac. *Contracts* §434 (1955)), and the judgment of the trial court thereon should not be disturbed unless it is clearly against the manifest weight of the evidence. *Executive Centers of America, Inc. v. Bannon* (1978), 62 Ill. App. 3d 738, 743; *Elgin Lumber & Supply Co. v. Malenius* (1967), 90 Ill. App. 2d 90, 97, 232 N.E.2d 319.

It is impossible to enunciate a rule that can be applied with mathematical exactness to determine when a failure to perform a promise discharges the duty to perform the return promise for an agreed exchange. Only such general principles based upon the inherent justice of the matter can be asserted. (Restatement of Contracts §275, Comment a (1932).) Where the failure is at the outset, a very slight failure is often sufficient to discharge the injured party. (Restatement of Contracts §275, Comment a (1932).) While the willfulness of the breach may not enhance the injury, "it does so far increase the demerit of the wrongdoer that the law is less inclined if a breach is wilful to require the injured party to perform." Restatement of Contracts §275, Comment a (1932).

In the case at bar there is ample evidence from which the trial court could have concluded that prior to April 1, 1979, the sellers had manifested a definite and unequivocal intent not to close and deliver possession on April 1, 1979. There is also ample evidence from which the trial court could have concluded that the sellers' behavior was wilful. The sellers contend, however, that the buyers had no right to rescind the contract based upon the sellers' refusal to surrender possession on April 1, 1979, because the buyers had agreed to extend the April 1, 1979, closing date. In support of this contention they argue:

> "Because the trial court simply ignored the prior agreement to extend the closing date, it must have concluded that to extend the closing the parties must have agreed both to an extension *and* to some particular date. No such requirement exists. If a contract is silent as to the time for possession the law will imply a reasonable time. *Quirk v. McDonnell*, 195 Ill. App. 331 (1915); 56 ALR 2d 1267."

In so arguing, however, the sellers have misinterpreted both the facts and the applicable law. We first note that we do not find applicable the sellers' citation to *Quirk v. McDonnell* for the proposition that if a contract is silent as to the time for possession the law will imply a reasonable time. The contract in the case at bar expressly provides for possession to be delivered at closing. In addition, Hayes testified that Bielinski always spoke in terms of closing and delivery of possession when discussing performance of the contract. Hayes also testified that he had explained to

the sellers that the contract required closing and delivery of possession on the same dates.

We now consider sellers' argument that the buyers agreed simply to extend the closing date without reference to a particular date. It is our opinion that such contention is not supported by the facts adduced at trial. When the sellers requested an extension of the closing date in either February or March, the buyers authorized Bielinski to extend the date for closing and possession until April 12, 1979. In Bielinski's March 20, 1979, letter to Hayes he wrote: "[p]ursuant to your request, my clients [the buyers] have agreed that April 12, 1979 will be an agreeable date to close the real estate transaction * * *."

Although the sellers were advised of the buyers' offer to extend possession and closing from April 1, 1979, until April 12, 1979, by Bielinski's March 20, 1979, letter addressed to Hayes, the sellers did not respond to this offer until April 5, 1979, when Hayes wrote a letter to Bielinski indicating that the sellers would be unable to close until April 20, 1979, and unable to deliver possession until April 23, 1979. Yet the sellers allege that the buyers had permitted the original closing date to pass without objection and without any determination of a specific closing date, and in support thereof they argue:

> "[The buyers] could not, be [sic] acquiescence, permit the April 1st date to pass and then, when they were unable to arrange an alternative closing date acceptable to them, reverse their election and declare the contract rescinded. * * *
>
> Once the April 1st closing date has passed by agreement, the buyers had an obligation to negotiate a reasonable alternate date for closing."

■■ It is our opinion that there is sufficient evidence from which the trial court could have properly concluded that the buyers had not agreed to a general extension but had instead offered to extend closing date to April 12, 1979; and that the sellers did not accept this offer and indicated that they were "unable" to close until April 20, 1979, and "unable" to deliver possession until April 23, 1979. Although the sellers did not notify the buyers of their intent not to accept the April 12, 1979, extension offer until April 5, 1979, the sellers' delay cannot be construed or interpreted as an agreement by the buyers to *generally* extend the April 1, 1979, closing date, or as an acquiescence in or waiver of the sellers' anticipatory breach. In conjunction therewith we note that throughout the negotiations the buyers maintained that closing and possession would be extended only until April 12, 1979. Moreover, when the buyers informed the sellers that they had subleased their apartment for April 15, 1979, and would require possession before that date, the sellers responded that all matters would be settled peaceably. Thus we cannot interpret the sellers' failure to

respond until April 5, 1979, to the buyers' March 20, 1979, offer to extend the closing date to April 12, 1979, as an election by the buyers "to keep the contract alive."

The sellers direct our attention to *Cantrel v. Kruck* (1975), 25 Ill. App. 3d 1060, 324 N.E.2d 260, which is distinguishable from the case at bar. In *Cantrel* is was "undisputed that the sellers orally agreed to extend the closing date beyond the December 1 date." The dispute was whether the closing was to be postponed only to December 3, 1971, or to a reasonable time after December 1, 1971. In the case at bar, however, the trial court found, based upon sufficient evidence, that there was no agreement to extend.

Based upon the circumstances of this case, it is our opinion that the judgment of the trial court that the sellers had committed an anticipatory breach of contract is not against the manifest weight of the evidence. It is unnecessary to consider sellers' argument that the buyers' sole remedy was to close and accept the $20 per day payment until the sellers delivered possession because the sellers' had manifested a definite and unequivocal intent not to close as well as not to deliver possession on April 1, 1979.

Based on the foregoing we affirm the judgment of the circuit court of Cook County.

Affirmed.

HARTMAN, P. J., and STAMOS, J., concur.