TRUMAN L. FLATT AND SONS COMPANY, INC., Plaintiff-Appellant, v.
SARA LEE SCHUPF et al., Defendants-Appellees.

Fourth District No. 4—94—0713

Argued March 6, 1995.—Opinion filed April 27, 1995.—Rehearing denied
May 30, 1995.

Gerri Papushkewych (argued), of Wolfson, Papushkewych & Rutherford,
and Kevin J. McFadden, of Peterson & Ross, both of Springfield, for appellant.

Paul E. Presney (argued), of Presney, Kelly & Presney, of Springfield, for
appellees.

PRESIDING JUSTICE KNECHT delivered the opinion of the
court:

Plaintiff Truman L. Flatt & Sons Co., Inc., filed a complaint seeking specific performance of a real estate contract made with defendants Sara Lee Schupf, Ray H. Neiswander, Jr., and American National Bank and Trust Company of Chicago (American), as trustee

under trust No. 23257. Defendants filed a motion for summary judgment, which the trial court granted. Plaintiff now appeals from the trial court's grant of the motion for summary judgment. We reverse and remand.

In March 1993, plaintiff and defendants entered a contract in which defendants agreed to sell plaintiff a parcel of land located in Springfield, Illinois. The contract stated the purchase price was to be $160,000. The contract also contained the following provisions:

"1. This transaction shall be closed on or before June 30, 1993, or upon approval of the relief requested from the Zoning Code of the City of Springfield, Illinois, whichever first occurs ('Closing Date'). The closing is subject to contingency set forth in paragraph 14.

* * *

14. This Contract to Purchase Real Estate is contingent upon the Buyer obtaining, within one hundred twenty (120) days after the date hereof, amendment of, or other sufficient relief of, the Zoning Code of the City of Springfield to permit the construction and operation of an asphalt plant. In the event the City Council of the City of Springfield denies the request for such use of the property, then this contract shall be voidable at Buyer's option and if Buyer elects to void this contract Buyer shall receive a refund of the earnest money paid."

On May 21, plaintiff's attorney sent a letter to defendants' attorney informing him of substantial public opposition plaintiff encountered at a public meeting concerning its request for rezoning. The letter concluded:

"The day after the meeting all of the same representatives of the buyer assembled and discussed our chances for successfully pursuing the re-zoning request. Everyone who was there was in agreement that our chances were zero to none for success. As a result, we decided to withdraw the request for re-zoning, rather than face almost certain defeat.

The bottom line is that we are still interested in the property, but the property is not worth as much to us [as] a 35-acre parcel zoned I-1, as it would be if it were zoned I-2. At this juncture, I think it is virtually impossible for anyone to get that property re-zoned I-2, especially to accommodate the operation of an asphalt plant. In an effort to keep this thing moving, my clients have authorized me to offer your clients the sum of $142,500.00 for the property, which they believe fairly represents its value with its present zoning classification. Please check with your clients and advise whether or not that revision in the contract is acceptable. If it is, I believe we can accelerate the closing and bring this mat-

ter to a speedy conclusion. Your prompt attention will be appreciated. Thanks."

Defendants' attorney responded in a letter dated June 9, the body of which stated, in its entirety:

"In reply to your May 21 letter, be advised that the owners of the property in question are not interested in selling the property for $142,500 and, accordingly, the offer is not accepted.

I regret that the zoning reclassification was not approved."

Plaintiff's attorney replied back in a letter dated June 14, the body of which stated, in its entirety:

"My clients received your letter of June 9, 1993[,] with some regret, however upon some consideration they have elected to proceed with the purchase of the property as provided in the contract. At your convenience please give me a call so that we can set up a closing date."

After this correspondence, plaintiff's attorney sent two more brief letters to defendants' attorney, dated June 23 and July 6, each requesting information concerning the status of defendants' preparation for fulfillment of the contract. Defendants' attorney replied in a letter dated July 8. The letter declared it was the defendants' position plaintiff's failure to waive the rezoning requirement and elect to proceed under the contract at the time the rezoning was denied, coupled with the new offer to buy the property at less than the contract price, effectively voided the contract. Plaintiff apparently sent one more letter in an attempt to convince defendants to honor the contract, but defendants declined. Defendants then arranged to have plaintiff's earnest money returned.

Plaintiff filed a complaint for specific performance and other relief against defendants and American, asking the court to direct defendants to comply with the terms of the contract. Defendants responded by filing a "motion to strike, motion to dismiss or, in the alternative, motion for summary judgment." The motion for summary judgment sought summary judgment on the basis plaintiff repudiated the contract.

Prior to the hearing on the motions, plaintiff filed interrogatories requesting, among other things, information concerning the current status of the property. Defendants' answers to the interrogatories stated defendants had no knowledge of any third party's involvement in a potential sale of the property, defendants had not made any offer to sell the property to anyone, no one had made an offer to purchase the property or discussed the possibility of purchasing the property, and defendants had not sold the property to, received any offer from, or discussed a sale of the property with, any other trust member.

After a hearing on the motions, the trial court granted the defendants' motion for summary judgment without explaining the basis for its ruling. Plaintiff filed a post-trial motion to vacate the judgment. The trial court denied the post-trial motion, declaring defendants' motion for summary judgment was granted because plaintiff had repudiated the contract. Plaintiff now appeals the trial court's grant of summary judgment, arguing the trial court erred because (1) it did not repudiate the contract, and (2) even if it did repudiate the contract, it timely retracted that repudiation.

Plaintiff contends the trial court erred in granting summary judgment. Summary judgment is proper when the resolution of a case hinges on a question of law and the moving party's right to judgment is clear and free from doubt. In considering a motion for summary judgment, the court must consider the affidavits, depositions, admissions, exhibits, and pleadings on file and has a duty to construe the evidence strictly against the movant and liberally in favor of the nonmoving party. (*In re Estate of Hoover* (1993), 155 Ill. 2d 402, 410-11, 615 N.E.2d 736, 739-40.) The motion will be granted if the court finds there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005 (West 1992).) A triable issue of fact exists where there is a dispute as to material facts or where the material facts are undisputed but reasonable persons might draw different inferences from those facts. In a case involving summary judgment, a reviewing court reviews the evidence in the record *de novo*. (*Hoover*, 155 Ill. 2d at 411, 615 N.E.2d at 740.) Here, there are no facts in dispute. Thus, the question is whether the trial court erred in declaring defendant was entitled to judgment as a matter of law based on those facts.

■ Plaintiff first argues summary judgment was improper because the trial court erred in finding plaintiff had repudiated the contract.

"The doctrine of anticipatory repudiation requires a clear manifestation of an intent not to perform the contract on the date of performance. *** That intention must be a definite and unequivocal manifestation that he will not render the promised performance when the time fixed for it in the contract arrives. [Citation.] Doubtful and indefinite statements that performance may or may not take place are not enough to constitute anticipatory repudiation." (*In re Marriage of Olsen* (1988), 124 Ill. 2d 19, 24, 528 N.E.2d 684, 686.)

These requirements exist because "[a]nticipatory breach is not a remedy to be taken lightly." (*Olsen*, 124 Ill. 2d at 25, 528 N.E.2d at 687.) The Restatement (Second) of Contracts adopts the view of the Uniform Commercial Code (UCC) and states "language that under a

fair reading 'amounts to a statement of intention not to perform except on conditions which go beyond the contract' constitutes a repudiation. Comment 2 to Uniform Commercial Code § 2—610." (Restatement (Second) of Contracts § 250, Comment *b*, at 273 (1981).) Whether an anticipatory repudiation occurred is a question of fact and the judgment of the trial court thereon will not be disturbed unless it is against the manifest weight of evidence. *Leazzo v. Dunham* (1981), 95 Ill. App. 3d 847, 850, 420 N.E.2d 851, 854.

As can be seen, whether a repudiation occurred is determined on a case-by-case basis, depending on the particular language used. Both plaintiff and defendants, although they cite Illinois cases discussing repudiation, admit the cited Illinois cases are all factually distinguishable from the case at hand because none of those cases involved a request to change a term in the contract. According to the commentators, a suggestion for modification of the contract does not amount to a repudiation. (J. Calamari & J. Perillo, Contracts § 12—4, at 524 n.74 (3d ed. 1987) (hereinafter Calamari), citing *Unique Systems Inc. v. Zotos International, Inc.* (8th Cir. 1980), 622 F.2d 373.) Plaintiff also cites cases in other jurisdictions holding a request for a change in the price term of a contract does not constitute a repudiation. (*Wooten v. DeMean* (Mo. Ct. App. 1990), 788 S.W.2d 522; *Stolper Steel Products Corp. v. Behrens Manufacturing Co.* (1960), 10 Wis. 2d 478, 103 N.W.2d 683.) Defendants attempt to distinguish these cases by arguing here, under the totality of the language in the letter and the circumstances surrounding the letter, the request by plaintiff for a decrease in price clearly implied a threat of nonperformance if the price term was not modified. We disagree.

■ The language in the May 21 letter did not constitute a clearly implied threat of nonperformance. First, although the language in the May 21 letter perhaps could be read as implying plaintiff would refuse to perform under the contract unless the price was modified, given the totality of the language in the letter, such an inference is weak. More important, even if such an inference were possible, Illinois law requires a repudiation be manifested clearly and unequivocally. Plaintiff's May 21 letter at most created an *ambiguous implication* whether performance would occur. Indeed, during oral argument defense counsel conceded the May 21 letter was "ambiguous" on whether a repudiation had occurred. This is insufficient to constitute a repudiation under well-settled Illinois law. Therefore, the trial court erred in declaring the May 21 letter anticipatorily repudiated the real estate contract as a matter of law.

Moreover, even if plaintiff had repudiated the contract, the trial court erred in granting summary judgment on this basis because

plaintiff timely retracted its repudiation. Only one published decision has discussed and applied Illinois law regarding retraction of an anticipatory repudiation, *Refrigeradora Del Noroeste, S.A. v. Appelbaum* (1956), 138 F. Supp. 354 (holding the repudiating party has the power of retraction unless the injured party has brought suit or otherwise materially changed position), *aff'd in part & rev'd in part on other grounds* (1957), 248 F.2d 858. The Restatement (Second) of Contracts states:

> "The effect of a statement as constituting a repudiation under § 250 or the basis for a repudiation under § 251 is nullified by a retraction of the statement if notification of the retraction comes to the attention of the injured party before he materially changes his position in reliance on the repudiation or *indicates* to the other party that he considers the repudiation to be final." (Emphasis added.) (Restatement (Second) of Contracts § 256(1), at 293 (1981).)

The UCC adopts the same position:

> "Retraction of Anticipatory Repudiation. (1) Until the repudiating party's next performance is due he can retract his repudiation unless the aggrieved party has since the repudiation cancelled or materially changed his position or otherwise *indicated* that he considers the repudiation final." (Emphasis added.) (810 ILCS 5/2—611(1) (West 1992).)

Professors Calamari and Perillo declare section 2—611 of the UCC:

> "is in general accord with the common law rule that an anticipatory repudiation may be retracted until the other party has commenced an action thereon or has otherwise changed his position. The Code is explicit that no other act of reliance is necessary where the aggrieved party *indicates* 'that he considers the repudiation final.' " (Emphasis added.) (Calamari § 12.7, at 528.)

"The majority of the common law cases appear to be in accord with this position." (Calamari § 12.7, at 528 n.93.) Other commentators are universally in accord. Professor Farnsworth states: "The repudiating party can prevent the injured party from treating the contract as terminated by retracting before the injured party has *acted* in response to it." (Emphasis added.) (2 E. Farnsworth, Contracts § 8.22, at 482 (1990).) Professor Corbin declares one who has anticipatorily repudiated his contract has the power of retraction until the aggrieved party has materially changed his position in reliance on the repudiation. (4 A. Corbin, Corbin on Contracts § 980, at 930-31 (1951) (hereinafter Corbin).) Corbin goes on to say the assent of the aggrieved party is necessary for retraction only when the repudiation is no longer merely anticipatory, but has become an actual breach at the time performance is due. (4 Corbin § 980, at 935.) Williston states

an anticipatory repudiation can be retracted by the repudiating party "unless the other party has, before the withdrawal, *manifested* an election to rescind the contract, or changed his position in reliance on the repudiation." (Emphasis added.) 11 W. Jaeger, Williston on Contracts § 1335, at 180 (3d ed. 1968) (hereinafter Williston).

Defendants completely avoid discussion of the common-law right to retract a repudiation other than to say Illinois is silent on the issue. Defendants then cite *Stonecipher v. Pillatsch* (1975), 30 Ill. App. 3d 140, 332 N.E.2d 151, *Builder's Concrete Co. v. Fred Faubel & Sons, Inc.* (1978), 58 Ill. App. 3d 100, 373 N.E.2d 863, and *Leazzo v. Dunham* (1981), 95 Ill. App. 3d 847, 420 N.E.2d 851, as well as Williston § 1337, at 185-86. These authorities stand for the proposition that after an anticipatory repudiation, the aggrieved party is entitled to choose to treat the contract as rescinded or terminated, to treat the anticipatory repudiation as a breach by bringing suit or otherwise changing its position, or to await the time for performance. The UCC adopts substantially the same position. (810 ILCS 5/2—610 (West 1992).) Defendants here assert they chose to treat the contract as rescinded, as they had a right to do under well-settled principles of law.

Plaintiff admits the law stated by defendants is well settled, and admits if the May 21 letter was an anticipatory breach, then defendants had the right to treat the contract as being terminated or rescinded. However, plaintiff points out defendants' assertions ignore the great weight of authority, discussed earlier, which provides a right of the repudiating party to retract the repudiation *before* the aggrieved party has chosen one of its options allowed under the common law and listed in *Stonecipher, Builder's Concrete*, and *Leazzo*. Plaintiff argues defendants' letter of June 9 failed to treat the contract as rescinded, and absent *notice* or *other manifestation* defendants were pursuing one of their options, plaintiff was free to retract its repudiation. Plaintiff is correct.

Defendants' precise theory that plaintiff should not be allowed to retract any repudiation in this instance is ambiguous and may be given two interpretations. The first is Illinois should not follow the common-law rule allowing retraction of an anticipatory repudiation before the aggrieved party elects a response to the repudiation. This theory warrants little discussion, because the rule is well settled. Further, defendants have offered no public policy reason to disallow retraction of repudiation other than the public interest in upholding the "sanctity of the contract."

The second possible interpretation of defendants' precise theory is an aggrieved party may treat the contract as terminated or rescinded *without* notice or other indication being given to the

repudiating party, and once such a decision is made by the aggrieved party, the repudiating party no longer has the right of retraction. It is true no notice is required to be given to the repudiating party if the aggrieved party materially changes its position as a result of the repudiation. (See, *e.g.*, Calamari § 12—7, at 528 n.92, citing *Bu-Vi-Bar Petroleum Corp. v. Krow* (10th Cir. 1930), 40 F.2d 488, 493.) Here, however, the defendants admitted in their answers to plaintiff's interrogatories they had not entered another agreement to sell the property, nor even discussed or considered the matter with another party. Defendants had not changed their position at all, nor do defendants make any attempt to so argue. As can be seen from the language of the Restatement, the UCC, and the commentators, shown earlier, they are in accord that where the aggrieved party has not otherwise undergone a material change in position, the aggrieved party must *indicate to the other party* it is electing to treat the contract as rescinded. This can be accomplished either by bringing suit, by notifying the repudiating party, or by in some other way manifesting an election to treat the contract as rescinded. Prior to such indication, the repudiating party is free to retract its repudiation. The Restatement (Second) of Contracts provides the following illustrations:

> "2. On February 1, A contracts to supply B with natural gas for one year beginning on May 1, payment to be made each month. On March 1, A repudiates. On April 1, before B has taken any action in response to the repudiation, A notifies B that he retracts his repudiation. B's duties under the contract are not discharged, and B has no claim against A.
>
> * * *
>
> ***
>
> 4. The facts being otherwise as stated in Illustration 2, on March 15, B *notifies* A that he cancels the contract. B's duties under the contract are discharged and B has a claim against A for damages for total breach ***." (Emphasis added.) Restatement (Second) of Contracts § 256, Comments *a, c* (1981).

This rule makes sense as well. If an aggrieved party could treat the contract as rescinded or terminated without notice or other indication to the repudiating party, the rule allowing retraction of an anticipatory repudiation would be eviscerated. No repudiating party ever would be able to retract a repudiation, because after receiving a retraction, the aggrieved party could, if it wished, simply declare it had already decided to treat the repudiation as a rescission or termination of the contract. Defendants' theory would effectively rewrite the common-law rule regarding retraction of anticipatory

repudiation so that the repudiating party may retract an anticipatory repudiation only upon assent from the aggrieved party. This is not the common-law rule, and we decline to adopt defendants' proposed revision of it.

Applying the actual common-law rule to the facts here, plaintiff sent defendants a letter dated June 14, which clearly and unambiguously indicated plaintiff intended to perform under the contract. However, defendants did not notify plaintiff, either expressly or impliedly, of an intent to treat the contract as rescinded until July 8. Nor is there anything in the record demonstrating any indication to plaintiff, prior to July 8, of an intent by defendants to treat the contract as rescinded or terminated. Thus, assuming plaintiff's May 21 request for a lower purchase price constituted an anticipatory repudiation of the contract, plaintiff successfully retracted that repudiation in the letter dated June 14 because defendants had not yet materially changed their position or indicated to plaintiff an intent to treat the contract as rescinded. Therefore, because plaintiff had timely retracted any alleged repudiation of the contract, the trial court erred in granting summary judgment for defendants on the basis plaintiff repudiated the contract. Defendants were not entitled to judgment as a matter of law.

The trial court's grant of summary judgment for defendants is reversed, and the cause is remanded.

Reversed and remanded.

COOK and McCULLOUGH, JJ., concur.