WPI Decisionkey v. Volvo Truck Parts  CV-97-467-JD  02/23/99

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


WPI Decisionkey, Inc.

        v.                              Civil No. 97-467-JD

Volvo Truck Parts Corp.


                            O R D E R


    The plaintiff, WPI DecisionKey, Inc. ("WPI"), brings this
action against the defendant, Volvo Truck Parts Corporation
("Volvo"), asserting claims for breach of contract, breach of
covenant of good faith, and unjust enrichment.  On December 23,
1997, Volvo filed its answer in which it asserted counterclaims
of breach of contract, breach of covenant of good faith, and
unjust enrichment.  Before the court is Volvo's motion for
summary judgment on all claims (document no. 13).


                           Background

    In late 1994 or early 1995, Volvo decided to develop a
"global software solution" known as IMPACT that would assist
mechanics servicing its trucks.  The IMPACT project consisted of
a number of sub-projects that each addressed different components
of the final product.  One component was the development of a
Service Information Database ("SID") which stored information
about Volvo trucks.  This was to be developed by a Volvo

affiliate, Volvo Data.  A second component was the development of a "method" authoring tool and a "diagnostic" authoring tool.  The method authoring tool was to enable technical writers to write repair procedures using information stored in SID, while the diagnostic authoring tool was to enable the technical writers to write diagnostic procedures using information stored in SID.

From late 1994 through November 1995, Volvo and WPI discussed the possibility of WPI providing the method and diagnostic tools to Volvo.  This culminated in a November 1995 WPI proposal to develop the tools, which Volvo accepted.

WPI was to customize its standard software product, IDEA, by integrating IDEA with data structures and databases specific to Volvo.  WPI representatives traveled to Sweden to meet with Volvo representatives and identify Volvo's requirements for the method and diagnostic tools.  Although no formal agreement was executed, Volvo and WPI jointly developed specifications for the customized IDEA project and WPI began customizing IDEA in March 1996.

The parties entered a formal agreement in June 1996, controlling the transaction.  The agreement provided a schedule pursuant to which WPI was to deliver various stages of the final product.  Volvo in turn had to supply necessary information regarding SID, among other things, to WPI so that WPI could design the tools appropriately.  The contract provided that if

2

the final product was not delivered and accepted by Volvo by January 7, 1997, Volvo could terminate the contract and seek a refund of its expenditures. There were clauses establishing payment schedules and requiring any modification of the specifications to be in writing and accepted by the parties.

At the time the agreement was signed both parties were already experiencing difficulties. At WPI development proceeded more slowly than expected. Moreover, WPI experienced changes in management and personnel. In assuming responsibility for the Volvo project, the new WPI personnel began to realize the extent of WPI's commitments and re-evaluate its ability to meet them within budget and on time. Volvo was also flagging. The development of SID and the provision of information necessary for WPI to meet its obligations had fallen behind schedule.

The parties therefore included in the June 1996 agreement an addendum that modified the schedule in the body of the contract by adding one month to each of the original dates. Moreover, the addendum modified the work that WPI was to perform. Rather than developing a system that integrated with SID, WPI was to develop a stand alone system.

Difficulties in meeting obligations persisted. In response to a September 27, 1996, letter from WPI seeking to modify the schedule and establish a release date for certain phases in

3

November and December, 1996, Volvo asserted that WPI was in material breach. Throughout October the parties negotiated, culminating in an apparent agreement in late October or early November on a new schedule that identified various "deliverables" and the dates on which they were to be delivered. WPI sent Volvo a letter identifying the project schedule and deliverables, and Volvo responded by providing its schedule and deliverables, stating that they hoped it did not differ from WPI's but that discussions would follow. The new schedule provided that the final product was to be delivered by May 1, 1997. Internal memoranda of WPI indicate that WPI identified incongruities between its expectations and Volvo's.

The parties proceeded to perform under the altered time frames. However, in a January 30, 1997, letter, WPI indicated to Volvo that there was additional work to be done beyond the original scope of the agreement and that this would take additional time and money. Volvo responded that there was nothing new beyond the original scope of the project. After reviewing its records, WPI found past documents that included those features WPI had thought were new and constituted additional work. In a February 7, 1997, letter, WPI wrote Volvo acknowledging the fact that the contested features were included in earlier specifications. However, WPI asserted that in

4

November the parties had restarted the project and had come to a similar level of understanding regarding the work to be done, which did not include the contested features.

On February 26, 1997, WPI sent a letter to Volvo proposing a solution that would address the contested features, stating that "numerous additional items would not make the May deliverable" and that there was "too much work to do and [WPI'] list of enhancements seems to grow by the week." La Liberte Aff. Ex. 42. "Should Volvo wish to accelerate the schedule for these items, we would need to add contract programmers to the project and would propose charging Volvo our cost for these additional resources." Id. On March 27, 1997, Volvo asserted that WPI was in material breach of the contract and terminated the agreement.

On September 18, 1997, WPI filed this action asserting breach of contract, breach of covenant of good faith, and unjust enrichment. Volvo answered and similarly asserted counterclaims of breach of contract, breach of covenant of good faith and unjust enrichment. In this motion Volvo seeks summary judgment on WPI's claims because WPI allegedly repudiated the contract. Volvo also seeks summary judgment on its claims asserting that it is entitled to reimbursement of all money paid by Volvo to WPI pursuant to the contract, as well as to attorney fees.

5

## Discussion

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the nonmovant, "'indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). However, once the defendant has submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of his [its] pleading, but must set

6

forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

As a preliminary issue, WPI asserts that Volvo is barred from asserting anticipatory repudiation in support of summary judgment because it is an affirmative defense and Volvo failed to assert it in its answer. See Fed. R. Civ. P. 8(c). Volvo contests the characterization of anticipatory repudiation as an affirmative defense. It also asserts that its answer sufficiently raised the defense and that in any event WPI had notice of it and suffered no prejudice given Volvo's answer and counterclaims.

"Generally speaking, failure to plead an affirmative defense results in a waiver of the defense and the exclusion of all evidence relevant to it." Conjugal Partnership Comprised of Joseph Jones and Venetta Jones v. Conjugal Partnership Comprised of Arthur Pineda and Joni Pineda, 22 F.3d 391, 400 (1st Cir. 1994). This rule is intended to ensure that the opposing party has "notice of the defense and a chance to develop evidence and offer arguments to controvert the defense." Wolf v. Reliance Standard Life Ins. Co., 71 F.3d 444, 449 (1st Cir. 1995). Given the purpose behind the 'raise or waive rule,' the First Circuit has held that "'[w]hen there is no prejudice and when fairness

7

dictates, the strictures of [the raise or waive] rule may be relaxed.'" Jones v. Pineda, 22 F.3d 391, 400 (quoting Jakobsen v. Massachusetts Port Authority, 520 F.2d 810, 813 (1st Cir. 1975)). As specifically pertinent to this case, where there is no prejudice, courts have allowed parties to raise affirmative defenses for the first time in post-answer motions. See Sanders v. Department of the Army, 981 F.2d 990, 991 (8th Cir. 1992) (affirmative defense raised in motion to dismiss allowed and formality of amended complaint unnecessary); Grant v. Preferred Research, Inc., 885 F.2d 795, 797 (11th Cir. 1989) (no prejudice where plaintiff received notice of affirmative defense in summary judgment motion); Rivera v. Anaya, 726 F.2d 564, 566 (9th Cir. 1984); Devito v. Pension Plan of Local 819 I.B.T. Pension Fund, 975 F. Supp. 258, 263 (S.D.N.Y. 1997) ("numerous courts have held that '[a]bsent prejudice to the plaintiff, a defendant may raise an affirmative defense [such as statute of limitations] in a motion for summary judgment for the first time.'") (quotations and citations omitted) (citing cases).

The court assumes for the purposes of this discussion that anticipatory repudiation is an affirmative defense under Federal Rule of Civil Procedure 8(c). WPI has not asserted that it would be prejudiced by Volvo's late assertion of anticipatory repudiation. Nor under the circumstances of this case would

8

prejudice seem likely.  In its anticipatory repudiation defense, Volvo alleges that WPI clearly and unequivocally stated it would not deliver the specified software on time.  Similarly, in its counterclaim Volvo asserted WPI had breached its agreement by attempting to change the specifications of the software and failing to comply with delivery dates.[1]  Given the congruent allegations underlying Volvo's counterclaim and its anticipatory repudiation defense, the element of surprise in this case is minimal.  WPI had fair notice of Volvo's general assertions and an opportunity to conduct discovery on them.  This is evidenced by WPI's well documented opposition to Volvo's motion for summary judgment.  In light this, and of WPI's failure to allege prejudice, fairness dictates that Volvo be allowed to raise the defense at this time.

---

[1]Specifically, in its answer, Volvo counterclaims that "WPI breached the contract by, inter alia, failing to deliver any of the software phases on time, attempting to change the specifications of the software, and completely failing to deliver several of the software phases."  Volvo Answer at 11.  Volvo further states that it "has been excused from performance by reasons of WPI's acts or conduct."  Id.  Volvo asserts as its tenth defense "[b]y its acts and conduct, the plaintiff has waived any rights it may have against the defendant . . . ."  Volvo Answer at 9.

9

I.    Anticipatory Repudiation

Volvo asserts that it was entitled to terminate the contract because WPI committed an anticipatory repudiation.  Volvo bases its defense of anticipatory repudiation on two letters sent by Bradford Wild, the president of WPI, to Volvo on February 7, 1997, and February 26, 1997, as well as internal WPI memoranda. Volvo asserts that in WPI's February correspondence Wild clearly and unequivocally stated that WPI would not honor its obligations under the contract.  WPI asserts that a genuine issue of material fact exists as to whether the parties modified their agreement, replacing the specifications initially included in the June agreement with other specifications and altering delivery dates. WPI also asserts that the statements at issue were not sufficiently unequivocal, definite statements of repudiation, but were instead offers to compromise.

New Hampshire law provides that in certain circumstances a party aggrieved by another party's repudiation of a contract not yet fully performed may resort to any remedy for breach.  See New Hampshire Rev. Stat. Ann. ("RSA") § 382-A:2-610[2].  The official comment to section 610 provides that "anticipatory repudiation centers upon an overt communication of intention or an action

_____

[2]Neither party disputes the applicability of New Hampshire's version of the UCC, and given their mutual reliance on it, both have implicitly acknowledged it controls the instant case.

which renders performance impossible or demonstrates a clear determination not to continue with performance." RSA § 382-A:2-610 comment 1. "[A] statement of intention not to perform except on conditions which go beyond the contract" is a repudiation. Id., comment 2. To constitute anticipatory repudiation, courts have required statements to be clear, positive, and unequivocal.[3] See Wallace Real Estate Inv. Inc. v. Groves, 881 P.2d 1010, 1019 (Wash. 1994) (en banc); Flat & Sons Co. v. Schupf, 649 N.E.2d 990, 993 (Ill. App. Ct. 1995). Whether a party has indeed anticipatorily repudiated a contract is a question of fact. See Grace v. Insurance Co. of North America, 944 P.2d 460, 467 (Alaska 1997) (reversing and remanding summary judgment order "for a factual determination whether INA in fact anticipatorily repudiated its contractual obligations"); Alaska Pacific Trading Co. v. Eagon Forest Products Inc., 933 P.2d 417, 522 (Wash. Ct. App. 1997) ("[T]he question of anticipatory repudiation is one of fact. . . . This issue, too, may only be decided on summary judgment if, taking all evidence in the light most favorable to

_____

[3]Although the New Hampshire Supreme Court has not had the opportunity to address the statutory provisions for anticipatory repudiation, in section 610 New Hampshire has followed the Uniform Commercial Code's provisions regarding anticipatory repudiation of contracts. See RSA § 382-A:2-610 ("RSA"). The court therefore finds other states' treatment of their analogous versions of the UCC provision regarding anticipatory repudiation to be persuasive.

11

the non-moving party, reasonable minds can reach only one conclusion."); Flat & Sons Co. v. Schupf, 649 N.E.2d 990, 993 (Ill. App. Ct. 1995) ("Whether an anticipatory repudiation occurred is a question of fact . . . ."); Jones v. Solomon, 428 S.E.2d 637, 639 (Ga. Ct. App. 1993) ("It is a question for the trier of fact as to whether any action of one party is sufficient to constitute a repudiation of the contract and amount to an anticipatory breach.").

The correspondence in which Volvo asserts WPI repudiated its agreement employs language such as "[m]y current position is . . . ," "[w]e must get together and discuss this topic in more detail . . . ," and "[w]e believe this work can be accomplished but is beyond the scope of the current project." Tule Aff., Ex. 40 at 1, 3. WPI requests Volvo's "guidance as to replanning or setting of priorities on additional work items." Id. at 3. Wild's letter of February 26, 1997, speaks in terms of a proposal. See Tule Aff. Ex. 42 ("I am prepared to offer a proposal . . . .").[4] On the other hand, Wild states that certain specifications would:

require additional YEARS - not months. The current

---

[4]Because there must have been an overt communication by WPI to Volvo establishing WPI's intention not to perform, Volvo's reliance on WPI's internal memorandum in this case is unwarranted.

12

> DecisionKey/Volvo contractors and personnel cannot
> deliver these additional works items . . . .

Tule Aff., Ex. 42. He also stated that WPI's current position was that it "could not commit to include [certain features] in the current schedule." Tule Aff. Ex. 40 at 1.

The language employed, such as use of the term proposal, implies a desire to negotiate. In contrast, WPI's statement that it would take years to develop certain features might in some circumstances strongly suggest repudiation. However, the facts of this case undermine their significance in the summary judgment context because the terms that the parties were operating under are unclear on this record.

WPI and Volvo entered a formal agreement in June 1996, that established specifications and delivery dates and governed the parties' mutual obligations. After a conflict in which Volvo asserted WPI was in material breach, WPI and Volvo appeared to reach a compromise agreement. In an October 30, 1996, letter to Volvo, WPI set out a new "scope of work and schedule of deliverables for the remainder of the project through May 1, 1997." La Liberte Aff. Ex. W. Volvo responded sending WPI a list of its expectations on deliverables and dates:

> We have discussed the proposed delivery plan and made
> our notes and interpretations of what we expect in each
> delivery.  Please take a look at Volvo's expectations.
> I hope that they do not differ from what is planned
> from WPI.  We can discuss them in detail next Monday.

Id. Ex. X.  Although internal WPI memoranda indicate that WPI was aware of certain discrepancies, the discussions that followed are not in the record and the parties then proceeded to operate under the apparently modified agreement.  Indeed, in Volvo's final termination letter of March 27, 1997, Volvo referred to their agreement setting specifications and delivery dates "as modified in May and October 1996."  La Liberte Aff. Ex. HH.

Courts have concluded that whether parties have modified a contract is a question of fact.  Zemco Mfg. Co. v. Pecoraro, 703 N.E.2d 1064, 1071 (Ind. App. Ct. 1998) ("Questions regarding the modification of a contract are ones of fact, and are to be determined by the trier of fact upon the evidence of the case."); Kiwanis Club v. de Kalafe, __ So.2d __, 1998 WL 712705, *2 (Fla. Dis. Ct. App. 1998) ("Whether a written contract has been modified by subsequent oral agreement or by course of dealing is a question of fact for the jury."); ALCA Const. Co., Inc. v. Waterbury Housing Auth., 713 A.2d 886, 890 (Conn. App. Ct. 1997) ("'Whether the parties to a contract intended to modify the contract is a question of fact.'") (quoting Newman & Partners v. CFC Constr. Ltd., 674 A.2d 1313 (1996)); Mayville v. Peerless

14

Ins. Co., 141 N.H. 317, 320 (1996); Park Square Auto Station v. American Locomotive Co., 79 N.H. 497 (1920). On the record before the court, reasonable people could find that the parties modified the original June 1996 agreement on or about October or November 1996. On this record it is unclear what the terms of the modified agreement, if modified, are.

The court concludes that genuine issues of material fact exist as to whether the parties modified the original agreement, thereby altering the specifications and delivery dates, and as to whether WPI anticipatorily breached its agreement with Volvo. The court therefore denies Volvo's motions for summary judgment on WPI's claims.

The court finds Volvo's reliance on Government of Republic of China v. Compass Communication, 473 F. Supp. 1306 (D.C. 1979) unpersuasive. Among other things, the court in Compass specifically stated that the defendant had failed "to produce evidence of a writing signed by plaintiff extending the time for performance." Id. at 1309. Here there is evidence that the parties may have modified the contract.

## II. Reimbursement

Volvo asserts that it has a contractual right to reimbursement of funds paid to WPI. Volvo bases the assertion

15

upon section 3.2 of the original June 1996 agreement, titled "Completion Date."  La Liberte Aff. Ex. K at 4.  Specifically, Volvo relies upon the following language:

> If the System has not been deemed accepted by Customer in accordance with Section 4 by January 7th, 1997, Customer, at its sole option and at any time prior to the System being accepted, may demand return of all payments made to Developer . . . .

Id.  This was modified once in addendum D of the original agreement, extending the date by one month and altering the deliverable.  See id. Addendum D.  As discussed above, a genuine issue of material fact exists as to whether the parties modified the contract, extending delivery dates and the scope of work.  A reasonable inference is that such a modification might also change the agreed upon completion date and affect this clause as well.  As such, Volvo's motion for summary judgment on this ground is denied as well.


## Conclusion

In light of the above discussion, Volvo's motion for summary judgment is denied, as is its request for a hearing on the summary judgment motion (document no. 13).

Based on what the court has learned of this case to date, it is the opinion of the court that the parties would be well advised to engage in some form of alternative dispute resolution

16

prior to trial.  Therefore, the court directs counsel to explore the matter and file a status report with the court by March 12, 1999.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

February 23, 1999

cc:  Thomas J. Donovan, Esquire
     John C. LaLiberte, Esquire