FOURTH DIVISION
FEBRUARY 21, 2008

No. 1-07-1647

| | | |
|---|---|---|
| VIRENDRA S. BISLA, M.D., LTD., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| AKHTAR PARVAIZ, | ) | Honorable |
| | ) | Martin S. Agran, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE CAMPBELL delivered the opinion of the court:

This interlocutory appeal involves an employment dispute between physicians. In 1998, defendant, Akhtar Parvaiz, M.D. (Dr. Parvaiz), entered into a three-year employment agreement to work as a cardiologist in the medical offices of plaintiff, Virendra S. Bisla, M.D., Ltd. (Dr. Bisla or Bisla Corporation). The employment agreement contained a covenant of employment that prohibited Dr. Parvaiz from practicing medicine within a 10-mile radius of Bisla Corporation for 12 months after termination of the agreement. In 2006, Dr. Bisla filed a motion for preliminary injunction to enjoin Dr. Parvaiz from practicing medicine in the so-called "covenanted area," and the circuit court of Cook County denied Bisla's motion. On appeal, Dr. Bisla contends that the trial court erred in denying the preliminary injunction after finding the employment agreement void thereby rendering the noncompetition covenant unenforceable. For the following reasons, we affirm the judgment of the trial court.

BACKGROUND

A. Initial Interview

The following relevant facts were revealed in testimony during an evidentiary hearing on the motion for preliminary injunction.

Dr. Bisla operates an Illinois medial corporation under his own name with a principal medical clinic located at 9011 S. Commercial Avenue, Chicago, Illinois (Clinic). Dr. Parvaiz is a cardiologist who resides at 106 Kraml Drive, Burr Ridge, Illinois.

After completing his fellowship in 1998, Dr. Parvaiz sought to join a medical practice and learned that Dr. Bisla was seeking to hire a cardiologist. Dr. Parvaiz called Dr. Bisla to inquire about a position and Dr. Bisla requested a *curriculum vitae* (CV). After receiving Dr. Parvaiz's CV, Dr. Bisla contacted Dr. Parvaiz to request a meeting.

Dr. Bisla offered Dr. Parvaiz employment at their initial meeting. The offer of employment consisted of a base salary and, after three years of employment, assuming Dr. Parvaiz satisfied certain criteria, Dr. Bisla would offer Dr. Parvaiz a 50% equity interest in Bisla Corporation, as well as 100% of the net proceeds generated by Dr. Parvaiz in excess of $300,000. Dr. Parvaiz accepted the offer on the spot and Dr. Bisla asked Dr. Parvaiz to return in a week to sign a written contract.

B. Employment Agreement

On January 25, 1008, Dr. Parvaiz and Dr. Bisla met in the cafeteria at Trinity Hospital and Dr. Bisla presented Dr. Parvaiz with a written employment agreement postdated February 1, 1998 (Employment Agreement). Dr. Parvaiz reviewed the Employment Agreement to ensure it provided the agreed-upon terms regarding the offer of equal partnership, the pay structure,

malpractice insurance, an annual leave and family health care coverage. Upon his review, Dr. Parvaiz noticed that the Employment Agreement did not include the term whereby he would receive 100% of the net proceeds generated by his work in excess of $300,000. Dr. Parvaiz brought the omission of the net proceeds term to Dr. Bisla's attention and Dr. Bisla hand-wrote the words "More than 300,000 Net → 100% To Dr. Parvaiz" on the bottom of the first page of the Employment Agreement. Once corrected, Dr. Parvaiz signed the agreement.

Section B of the Employment Agreement provided that Dr. Bisla would carry malpractice insurance for Dr. Parvaiz in Indiana and medical coverage for Dr. Parvaiz and his family and offered Dr. Parvaiz the option to acquire a 50% equity interest in Bisla Corporation after three years of employment.

Section 15 of the Employment Agreement, entitled "Equity Interest," provided as follows:

> "**Equity Interest**. In the event Employee completes three (3) full years of employment with Corporation and satisfies each of the following conditions, Employee shall be offered the option to acquire an equity interest in Corporation equal to the equity interest of each other stockholder of Corporation. The determination as to whether Employee has satisfied Subsection (b) shall be solely determined by Corporation.
>
> > (a)  Employee shall not have given or received notice of termination of his employment at or prior to the date of closing of the purchase of stock by Employee.

(b)     Employee shall have demonstrated:

(1)     continuous compatibility with other

physician employees and

professional staff of Corporation;

(2)     acceptance by patients; and

(3)     above-average professional performance.

(c)     A final purchase agreement shall be entered into by

the parties setting forth the purchase price and terms

and conditions for the acquisition of such equity

interest."

Section 15 further provided that after three years of employment, Dr. Parvaiz would be offered the option to acquire an equal ownership interest in the Bisla Corporation.

## C. Breach of Employment Agreement

On January 31, 2001, Dr. Parvaiz completed three years employment with Bisla Corporation, fulfilling the objective and subjective criteria of section 15. Dr. Bisla, however, failed to offer Dr. Parvaiz the option to acquire a 50% equity interest as agreed. Dr. Parvaiz and his wife met with Dr. Bisla at the Hyatt Regency Oak Brook in late 2001, where Dr. Bisla presented documents to Dr. Parvaiz offering the option to acquire a 45% percent equity interest in Bisla Corporation, spread over a five-year period. Dr. Bisla brought along a document entitled "Agreement For Purchase of Capital Stock of Virenda S. Bisla, M.D., Ltd.," for Dr. Parvaiz to sign. Dr. Bisla also presented to Dr. Parvaiz an "Amended and Restated Employment

Agreement," which he intended to supersede the prior Employment Agreement, and instructed Dr. Parvaiz that it was "in his best interest" to sign both agreements.

Dr. Parvaiz refused to sign the new agreements since they did not comply with section 15 of the Employment Agreement.

Dr. Bisla also failed to provide Dr. Parvaiz and his family with medical insurance until 2003, five years after execution of the Employment Agreement. Dr. Bisla also failed to provide Dr. Parvaiz with malpractice coverage in Indiana as agreed.

### D. Change in Relationship

After refusing to sign the revised 45% ownership agreement, Dr. Parvaiz believed that he was working for Dr. Bisla under an oral agreement, rather than toward partnership, since the Employment Agreement did not contemplate any salary provision after January 31, 2001. As such, Dr. Parvaiz began to seek other employment. In 2005, Dr. Parvaiz received an offer from Elgin Cardiology at a salary of $300,000. Dr. Parvaiz advised Dr. Bisla of his offer and Dr. Bisla orally agreed to match the offer and increased Dr. Parvaiz's salary to $300,000.

### E. Bisla Corporation Dissolved

On December 1, 2002, The Illinois Secretary of State involuntarily dissolved the Bisla Corporation pursuant to the Illinois Business Corporation Act. 805 ILCS 5/12.45(d) (West 2002) (ACT). Dr. Bisla did not advise Dr. Parvaiz of the dissolution. Section 3(b)(I) of Dr. Parvaiz's Employment Agreement defined Bisla Corporation's dissolution as an event automatically terminating Parvaiz's Employment Agreement. Bisla Corporation remained dissolved until July 2003, when Dr. Bisla's attorneys filed an application for reinstatement. Dr. Parvaiz continued to work for Bisla Corporation until his termination on July 14, 2006.

F.  Preliminary Injunction

Dr. Bisla filed a verified complaint for injunctive and other relief on November 8, 2006, followed by a motion for preliminary injunction.  Dr. Bisla alleged that at some time during 2005, Dr. Parvaiz began "secretly performing" professional services for Medial Clinics of America (MCA), a competitor of Bisla Corporation, without Bisla Corporation's knowledge or consent.  Dr. Bisla alleged that Dr. Parvaiz failed to turn over any monies received from MCA to Bisla Corporation.

On August 31, 2005, Dr. Bisla, through counsel, sent Dr. Parvaiz a letter demanding that he cease and desist all unauthorized professional activities and provide a complete accounting of all billings and collections.  Dr. Parvaiz denied that he was working outside Bisla Corporation.  Dr. Bisla alleged that Dr. Parvaiz's performance, which had been reduced in quality, temporarily improved, but then again began to deteriorate.

At the hearing, Dr. Parvaiz admitted that he was practicing and treating patients outside of Bisla Corporation, and that he started his own medical office located within the covenanted area, but that he was under the impression that he was no longer working under the Employment Agreement because the parties never agreed to the terms of the Agreement.

The trial court denied the injunction on two grounds:  (1)  the temporary administrative dissolution of the Bisla Corporation for nonpayment of a filing fee to the Illinois Secretary of State constituted a material breach of the Employment Agreement invalidating the covenant of employment; and (2)  Dr. Bisla's failure to offer Dr. Parvaiz a 50% equity interest in Bisla Corporation constituted a material breach of the Employment Agreement, invalidating the covenant of employment.

Dr. Bisla's timely appeal followed.

OPINION

I.  Restrictive Covenant

On appeal, Dr. Bisla initially contends that the trial court erred in refusing to issue a preliminary injunction to prevent Dr. Parvaiz from practicing medicine in violation of the covenant of employment contained within the Employment Agreement.

In order to obtain injunctive relief, a plaintiff must show: (1)  a certain and clearly ascertainable right in need of protection; (2) irreparable harm; (3) no adequate remedy at law; and (4) the likelihood of prevailing on the merits.  We review the decision of the trial court by a manifest weight of the evidence standard.  Mohanty v. St. John Heart Clinic, S.C., 225 Ill. 2d 52, 866 N.E.2d 85 (2006).

Although generally a professional's interest in his or her medical practice is a protectable business interest (Retina Services, Ltd. v. Garoon, 182 Ill. App. 3d 851, 538 N.E.2d 651 (1989)), whether Dr. Bisla is entitled to protection of this ascertainable right hinges here on whether the Employment Agreement and covenant not to compete contained therein were valid and in force at the time Dr. Parvaiz pursued other employment opportunities.

Dr. Bisla argues that the Employment Agreement was, in fact, in force, citing cases holding that requesting a modification of a contract does not, in and of itself, constitute "repudiation."  See, *e.g.*, Henderson v. Lemna, 76 Ill. App. 3d 168, 394 N.E.2d 1070 (1979); Truman L. Flatt & Sons Co. v. Schupf, 271 Ill. App. 3d 983, 649 N.E.2d 990 (1995).

Dr. Parvaiz responds that his continued employment at Bisla Corporation did not constitute working under an agreement.  In support, Dr. Parvaiz cites Marwaha v. Woodridge

Clinic, S.C., 339 Ill. App. 3d 291, 790 N.E.2d 974 (2003). There, the plaintiff, Dr. Marwaha, was employed under a three-year agreement with Woodridge Clinic that included a noncompetition clause, with a termination date of June 30, 1996. Dr. Marwaha remained employed at Woodridge Clinic after June 30, 1996, until his termination on November 24, 2001. Woodridge Clinic attempted to enforce the noncompetition clause, but this court held that it was unenforceable once the employment agreement expired. Marwaha, 229 Ill. App. 3d at 294-95.

Similarly, the covenant not to compete in the Employment Agreement here expired upon termination on January 31, 2002. Thus, no agreement was in force at the time Dr. Parvaiz practiced medicine outside of the Bisla Corporation.

Morever, a breach of contract can operate to discharge the duties of a covenant not to compete where the breach is material. Whether a breach is material involves a determination of "whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage consider[] such a breach to be material, and whether the allowance of reciprocal non-performance by the non-breaching party will result in his accrual of an unreasonable or unfair advantage." William Blair & Co. v. FI. Liquidation Corp., 358 Ill. App. 3d 324, 346-47, 830 N.E.2d 760 (2005).

The record here shows that Dr. Bisla materially breached the Employment Agreement by failing to offer Dr. Parvaiz a 50% equity interest in Bisla Corporation, as agreed. The Employment Agreement contemplated a term from February 1, 1998, for a period of 12 months, continuing year to year. The Agreement contemplated a 50% share to Dr. Parvaiz after fulfilling certain professional obligations. Contrary to the agreed terms, however, Dr. Bisla later presented

the concept of 45% share to Dr. Parvaiz, not as a modification to the Employment Agreement but, rather, as a substitute Employment Agreement. And Dr. Parvaiz did not agree to the terms. The trial court properly concluded that this constituted a material breach of the Employment Agreement

Thus, Dr. Bisla failed to establish any of the criteria necessary to obtain an injunction. He cannot show that the Employment Agreement and covenant not to compete were ascertainable rights in need of protection where the facts reveal that there was no meeting of the minds after Dr. Bisla unilaterally attempted to alter the terms of the agreement from a 50% share to a 45% share. The Employment Agreement contemplated that "no change or modification shall be valid unless the same be in writing and signed by Employee and Corporation." Dr. Bisla cannot show irreparable harm nor an inadequate remedy since the Employment Agreement was not in force. Dr. Bisla failed to show a likelihood of success on the merits necessary to obtain an injunction and the trial court properly denied the injunction.

## II. Dissolution

Dr. Bisla further contends that the trial court erred in finding that the dissolution of Bisla Corporation constituted a material breach of the Employment Agreement. Dr. Bisla argues that the ACT takes precedence over a private agreement. The ACT provides that when an administratively dissolved corporation is reinstated, the corporate existence "shall be deemed to have continued without interruption *** and all acts *** of its officers *** and shareholders *** shall stand ratified and confirmed." 805 ILCS 5/12.45(d) (West 2002).

The Employment Agreement contains no provision stating that the Agreement remains valid when dissolved, however, and any ambiguity in the terms of a contract must be resolved

against the drafter of the disputed provision. Duldulao v. Saint Mary of Nazareth Hospital Center, 115 Ill. 2d 482, 493, 505 N.E.2d 314 (1987). The trial court found that Bisla placed the dissolution clause in the Employment Agreement as part of the preprinted form tendered to Dr. Parvaiz and that it was "obviously a material consideration at least for the plaintiff." Bisla cannot successfully argue that the clause does not mean what its plain language sets forth. We therefore hold that the trial court properly concluded that the dissolution of Bisla Corporation materially breached the Employment Agreement.

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

NEVILLE, P.J., and O'BRIEN, J., concur.