2020 IL App (1st) 200207-U

FIFTH DIVISION
Order filed: September 18, 2020

No. 1-20-0207

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF SILVIO L. DeANTONI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Deceased | ) | Cook County. |
| | ) | |
| (Thomas J. Canna, Michael T. Canna, and Canna Law Offices, P.C., | ) | |
| | ) | |
| Petitioners-Appellees, | ) | |
| | ) | |
| v. | ) | No. 18 P 2228 |
| | ) | |
| Patricia Scott, | ) | Honorable |
| | ) | Kent A. Delgado, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the orders of the circuit court because the respondent failed to provide a sufficient record for review.

¶ 2    The respondent, Patricia Scott, as the executor of the estate of Silvio DeAntoni (decedent), appeals from orders of the circuit court of Cook County: (1) denying her petition to take discovery; and (2) granting a request for attorney fees made by the petitioners, Thomas J. Canna, Michael T. Canna, and Canna Law Offices, P.C. On appeal, the respondent argues that the circuit court abused its discretion when it denied her petition to initiate discovery regarding the petitioners' request for fees and erred in granting the petitioners' request for additional fees. For the reasons that follow, we affirm.

¶ 3    The following facts relevant to this appeal were derived from the parties' pleadings, attached documents, and orders contained in the record.

¶ 4    The decedent died testate on October 31, 2017. His will named his niece, the respondent, as the executor of his estate. On February 20, 2018, the respondent executed an agreement (the agreement) with Canna and Canna, Ltd. (Canna and Canna), to assist her in her duties as executor. The agreement consisted of a cover letter and a document titled "Standard Terms of Engagement." The cover letter stated the following regarding Canna and Canna's fees:

> "Rather than base our fee on a percentage of the estate, we will agree to perform all normal and customary services relating to the estate for a fee not to exceed $3,500.00, based upon an hourly rate of $200.00 per hour. We will continue to bill at our hourly rate until that maximum amount is reached. Any legal fees and charges associated with the sale of [DeAntoni's] home, as well as any filing fees, publication costs and other expenses will be payable out of the estate assets in addition to our other legal fees, although we may advance those costs as necessary. Of course this fee structure may have

to be amended in the unlikely event that a Will contest is filed, unusual delays are encountered, or an unusual number of court appearances are required."

The "Standard Terms of Engagement" also contained a provision regarding fees, stating that: "Any estimate of the fees and other charges that may be incurred in connection with the services that we will provide is not a fixed or maximum fee and does not constitute a commitment by us to perform the described services for that amount, or an obligation by you to pay that amount."

¶ 5 On April 2, 2018, the respondent filed a petition for probate of will and for letters testamentary for the estate of the decedent, estimating the value of the estate to be $734,486.17. On April 26, 2018, Michael appeared in court on behalf of the respondent to open the estate; he was unsuccessful, and the case was continued to July 10, 2018. On May 1, 2018, Canna and Canna sent the respondent an invoice for $3003, which included $2550 in fees and $453 in costs.

¶ 6 On July 10, 2018, the estate was successfully opened, and the court entered orders declaring heirship, admitting the will to probate, and issuing letters of office to the respondent as independent executor. On July 13, 20, and 27, 2018, notice was published in the Chicago Daily Law Bulletin that the will had been admitted to probate and that the decedent's heirs had the right to require proof of the will and to contest the will.

¶ 7 On October 1, 2018, Canna and Canna sent the respondent a second invoice for $4198. The second invoice reflected that the respondent still owed $3003 from the first invoice, plus an additional $6550 in fees and $245 in costs. The invoice also reflected that Canna and Canna had applied a "reduction in fees" worth $5600, which reduced the amount of total fees owed from $9100 to $3500. The respondent paid the full $4198 to Canna and Canna on December 1, 2018.

¶ 8     On September 5, 2019, Thomas notified the respondent that he and Michael were leaving Canna and Canna and forming Canna Law Offices, P.C. The respondent executed a document indicating that she wished to have Thomas and Michael continue as her counsel. On September 13, 2019, the circuit court granted the respondent's motion to substitute Canna Law Offices, P.C. as her attorneys.

¶ 9     On October 15, 2019, Michael sent the respondent a "final account" for the estate, which included an additional $6000 in attorney fees for the petitioners. The respondent sent Michael a reply, stating that it was her understanding that the petitioners' fees "were capped" at $3500 pursuant to the agreement and requesting an explanation regarding the additional request for fees. On October 18, 2019, the petitioners sent the respondent a third invoice, which indicated that their total billing for work on the estate was $15,972.64.

¶ 10     On October 29, 2019, Thomas J. Scannell filed an appearance on behalf of the respondent. On November 12, 2019, the petitioners filed a motion to withdraw as counsel for the respondent and to request attorney fees in the amount of $6000. The petitioners argued that the agreement with the respondent contained a provision that allowed for additional fees in the event that the representation went beyond what was "normal and customary." The motion alleged that, as a result of the respondent's apathy and unresponsiveness, the administration of the estate suffered unusual delays and required more of the petitioners' time and effort than anticipated. In support of their motion, the petitioners attached the agreement and the third invoice.

¶ 11     On November 18, 2019, the respondent filed a petition to initiate discovery in order to respond to the petitioners' request for additional fees, arguing that discovery was needed to determine whether the petitioners altered or inflated their billing and whether they met their

obligations under the agreement. The petition sought the "entire, original, hard and electronic case files, including the original contemporaneous timeslips," for each entry on the three invoices sent to the respondent and the depositions of Thomas and Michael.

¶ 12    On November 21, 2019, the circuit court entered an order: (1) granting the petitioners' motion to withdraw; (2) setting a date to hear argument on the petitioners' request for fees; (3) granting Scannell leave to appear on behalf of the respondent; and (4) denying the respondent's petition to take discovery. The record does not contain a transcript of the proceedings from that day.

¶ 13    On December 12, 2019, the respondent filed a response to the petitioners' request for additional fees, arguing, *inter alia*, that she already paid the petitioners the full amount she was required to pay under the agreement and that the petitioners were responsible for many of the delays in administering the estate. The respondent also renewed her argument that the petitioners' invoices suggested that they engaged in dubious billing practices.

¶ 14    The petitioners filed a reply, again alleging that, because of the respondent's behavior, they were required to provide representation that went beyond what was "normal and customary." The petitioners also accused the respondent of violating "an integral" part of the agreement by using another law firm to sell the decedent's home, which deprived them of fees related to the sale.

¶ 15    On January 16, 2020, after hearing argument from the parties, the circuit court entered an order granting the petitioners $2000 in additional fees. The order states that the court "found the contract to allow for additional fees" and that $2000 in additional fees was "fair and reasonable." The record does not a contain a transcript of proceedings from that day. On January 30, 2019, the

respondent filed a notice of interlocutory appeal pursuant to Illinois Supreme Court Rule 304(b)(1), naming the court's orders of November 19, 2019 and January 16, 2020.

¶ 16    On appeal, the respondent raises two arguments: (1) the circuit court abused its discretion when it denied her petition to take discovery; and (2) the circuit court erred in granting the petitioners' request for additional fees.

¶ 17    We turn first to the respondent's challenge to the court's denial of her petition to take discovery. Generally speaking, a trial court is afforded great latitude in rulings on discovery matters, and a court of review will not disturb such rulings absent an abuse of discretion. *D.C. v. S.A.*, 178 Ill. 2d 551, 559 (1997). A court abuses its discretion "when its ruling 'is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *Taylor v. County of Cook,* 2011 IL App (1st) 093085, ¶ 23 (quoting *People v. Caffey,* 205 Ill. 2d 52, 89 (2001)). This standard of review is "highly deferential" to the trial court. *Taylor,* 2011 IL App (1st) 093085, ¶ 23.

¶ 18    Before turning to the merits, however, we must first address the lack of transcripts in the record. As the appellant, the respondent had the duty of providing this court with a sufficiently complete record of the proceedings below to support her claim of error. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319 (2003) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). The purpose of appellate review is to evaluate the record presented in the trial court and review must be confined to what appears in the record. *People v. Canulli*, 341 Ill. App. 3d 361, 367-68 (2003). The record before us does not contain any transcripts from the November 21, 2019 hearing on the respondent's petition to take discovery, or any acceptable substitute such as a bystander report or an agreed statement of facts. See Ill. S. Ct. R. 323 (eff. July 1, 2017). In

the absence of a complete record, the reviewing court must indulge in every reasonable presumption favorable to the judgment and will presume that the trial court's judgment conformed with the law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 391-92.

¶ 19    Here, the record shows that the circuit court denied the respondent's petition to take discovery following a hearing on November 21, 2019. However, because we do not have a transcript of those proceedings, we do not know what factors the circuit court considered when it chose to deny the respondent's petition. In the absence of a complete record, we will not speculate as to what occurred in the circuit court. *Foutch*, 99 Ill. 2d at 391-92. Rather, under such circumstances, we assume the circuit court's order was in conformity with the law (*In re Marriage of Sanchez*, 2018 IL App (1st) 171075, ¶ 37) and affirm its judgment. Accordingly, we find that the circuit court did not abuse its discretion when it denied the respondent's petition to take discovery.

¶ 20    The respondent next argues that the circuit court erred when it granted the petitioners' request for an additional $2000 in attorney fees. Specifically, the respondent argues that the agreement caps the petitioners' fees at $3500, which she had already paid, and she never agreed to amend the fee schedule.

¶ 21    To begin, the parties disagree as to the standard of review that we should apply. The respondent contends that our review is *de novo* because the petitioners based their request for fees, and the circuit court based its ruling, exclusively on the terms of the agreement, which is a pure question of law. The petitioners argue that section 27-2 of the Probate Act (755 ILCS 5/27-2 (West 2018)) gives the circuit court broad discretion to determine the amount of fees to be awarded to an attorney who provided services to an executor and such a determination should

not be overturned on review unless it is manifestly erroneous. We agree with the respondent that the petitioners asked for, and the circuit court granted, additional fees based on the terms of the agreement, and therefore, our task on review is to interpret the agreement.

¶ 22    When construing a contract, our primary objective is to give effect to the intent of the parties, as revealed by the language used in the agreement. *Gallagher v. Lenart*, 226 Ill. 2d 208, 232-33 (2007). "Where the terms of an agreement are clear and unambiguous, they will be given their plain and ordinary meanings, and the parties' intent must be determined from the language of the agreement alone." *State Farm Fire and Casualty Co. v. Watts Regulator Co.*, 2016 IL App (2d) 160275, ¶ 27. Where the contract is ambiguous, its interpretation is generally a question of fact subject to rules of contract construction and parol evidence. *Farm Credit Bank v. Whitlock*, 144 Ill. 2d 440, 447 (1991). A contract is ambiguous where the language employed is susceptible to more than one reasonable meaning or obscure in meaning through indefiniteness of expression. *Meyer v. Marilyn Miglin, Inc.*, 273 Ill. App. 3d 882, 888 (1995). Whether contractual language is ambiguous as to the parties' intent is a question of law. *Quake Construction Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288 (1990).

¶ 23    With these principles in mind, we turn to the language of the agreement. As noted, the agreement contained the following provision regarding the petitioners' fees: "Rather than base [the petitioners'] fee on a percentage of the estate, [the petitioners] will agree to perform all normal and customary services relating to the estate for a fee not to exceed $3,500.00, based upon an hourly rate of $200.00 per hour. *** Of course this fee structure may have to be amended in the unlikely event that a Will contest is filed, unusual delays are encountered, or an unusual number of court appearances are required." The agreement does not define what is

"normal and customary," nor does it indicate what constitutes an unusual delay or an unusual number of court appearances.

¶ 24    The respondent argues that this provision capped the petitioners' fees at $3500 and required that any amendment to the fee structure be agreed to by both parties or the representation would be terminated. The petitioners, in contrast, maintain that this provision sets a $3500 cap for "normal and customary" services but allows them to recover additional fees beyond that amount in the event that there are unexpected delays or an unusual amount of court appearances are required, which is what occurred in this case.

¶ 25    Neither the respondent's nor the petitioners' interpretation of the agreement's language is facially unreasonable. Complicating matters further, the fee provision included in the document titled "standard terms of engagement" states the following: "Any estimate of the fees and other charges that may be incurred in connection with the services that [the petitioners] will provide *is not a fixed or maximum fee* and does not constitute a commitment by [the petitioners] to perform the described services for that amount, or an obligation by [the respondent] to pay that amount." (Emphasis added.) This provision seemingly provides that any estimate of fees provided by the petitioners "is not a fixed or maximum fee" and does not commit the petitioners to perform the services for that amount. Reading these provisions together, we conclude that the agreement is ambiguous as to whether the petitioners may recover more than $3500 in fees for the work performed on behalf of the respondent.

¶ 26    At this point, we note that the respondent has, once again, failed to provide this court with a transcript of the January 16, 2020 proceedings, nor is there a bystander's report or an agreed statement of facts filed pursuant to Supreme Court Rules 323(c) and (d). Ill. S. Ct. R.

323(c), (d) (eff. July 1, 2017). As mentioned, without an adequate record on appeal, "it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch*, at 392. Under such circumstances, "[a]ny doubts which may arise from the incompleteness of the record," including the absence of relevant transcripts, must be "resolved against the appellant." *Id.*

¶ 27 Notwithstanding *Foutch*, this court has recognized that a transcript of proceedings in the circuit court may be unnecessary when an appeal solely involves a question of law. See, e.g., *Gonella Baking Co. v. Clara's Pasa di Casa, Ltd.*, 337 Ill. App. 3d 385, 388 (2003). However, the interpretation of an ambiguous contract is generally a question of fact, not a pure question of law. *Whitlock*, 144 Ill. 2d at 447. Consequently, a court's interpretation of an ambiguous contract will not be disturbed on review unless it is against the manifest weight of the evidence. *Dow v. Columbus-Cabrini Medical Center*, 274 Ill. App. 3d 653, 659 (1995). Without a transcript of proceedings or substitute therefor, we can only speculate as to why the court ruled the way that it did and, if it found the contract ambiguous, what the factual basis was for the court's determination that the contract allowed for additional fees. Simply put, absent a transcript of the hearing, we cannot ascertain what information was before the court when it entered its order. Accordingly, we must presume that the court's January 16, 2020 order had a sufficient factual basis and was in conformity with the law. *Foutch*, 99 Ill. 2d at 392. Consequently, the order must be affirmed.

¶ 28 For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 29 Affirmed.